# Baker v. Westmoreland & Cambria Natural Gas Co., Appellant.

*Negligence—Conflict of evidence—Question for jury.*

When the facts are admitted or so clearly and conclusively proved as to admit of no reasonable doubt, it is the duty of the court to declare the law applicable to them ; but when material facts are disputed, or even in doubt, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what the facts are, and apply them to the law as declared by the court.

*Evidence—Declarations of agent—Lineman.*

Declarations of a lineman of a natural gas company made to a person about connecting with the pipe line, to the effect that the gas had been stopped off by a valve, and that there would be no danger of making a connection, are admissible in an action to recover damages for injuries caused by an explosion resulting from the gas being forced at an extraordinary pressure through the main before plaintiff's plumbing was in a condition to keep it from his house.

*Contributory negligence—Burden of proof.*

Contributory negligence is matter of defence, and the onus probandi is on the defendant, unless the plaintiff's own evidence sufficiently discloses the fact of contributory negligence. In that event, the plaintiff cannot recover, and of course defendant is relieved from the necessity of proving

what has already been established by the plaintiff's evidence. If, however, the plaintiff makes out a prima facie case, without disclosing contributory negligence, the defendant must assume the burden of making out his defence.

Argued Oct. 4, 1893. Appeals, Nos. 80 and 81, by defendant, from judgment of C. P. Westmoreland Co., Nov. T., 1890, Nos. 307 and 309, on verdict for plaintiff, Amanda M. Baker, to. use of Liverpool, London & Globe Ins. Co. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for injuries caused by explosion of natural gas. Before WHITE, P. J., 40th judicial district, specially presiding.

At the trial it appeared that, in 1886, plaintiff owned and occupied a residence in Latrobe. The house was in the middle of a large lot which extended back to a street or road called the Derry road. The company, for the purpose of supplying the two houses of plaintiff and Mrs. Reuben Baker with gas, laid a large pipe, from its general system, into the Derry road, and near the end of this pipe put an elbow with a T, having two openings, one for the service pipe to the house of plaintiff and the other for the service pipe to the house of Mrs. Reuben Baker. Each of these openings at the T was protected by a valve. If these valves remained closed no gas could pass into the service pipes that were to be attached to the T; if they were open, the gas in the main would flow without any obstruction to the house. In preparing his house for the use of the gas, S. H. Baker, husband of plaintiff, had a system of pipes put through it, and this system was connected in the basement of the house where it was to be attached to the service pipe. He then had a two inch service pipe laid from the inside of his cellar wall down through his grounds to a point about ten feet distant from the main on the Derry road. The cellar end of this service pipe was not connected with the general house system and was left without any cap or plug. The family had been using the basement to cook in, and the open stove that always had fire in it stood but a few feet away from the open end of the service pipe. On Nov. 10, 1886, Mr. Baker received from the superintendent of the gas company, W. L. Mellon, permission to connect his service pipe with the main in the Derry road. When

he went with his plumber to make the connection he found that gas at a high pressure was being discharged from the end of the T intended for Mrs. Reuben Baker's house. He inquired of one Jerry Dillon, a lineman, and employee of the company, whom he found there, what was being done. Dillon informed him that water had gotten into the line, and he was using the full strength of the gas to blow the water out of the line. Mr. Baker said under those circumstances he would not connect up, but Dillon replied that the valve on his side of the T was closed and would remain so, and consequently no gas could get into his service pipe. Baker, relying on this statement of Dillon, had the connection made. This condition of things remained until the next morning, when Dillon, who was still at work blowing the water out of the line, opened the valve on Mr. Baker's end of the T. The gas immediately flowed into the service pipe, and escaping through its open end into the cellar took fire at the stove and a heavy explosion followed.

S. H. Baker, when on the stand, was asked : " Q. What did you tell him (Dillon) about the condition of your pipe at the house? A. I told Mr. Dillon "—Defendant objects to the testimony of the witness as a conversation that passed between him and Mr. Dillon, who was only a lineman of the defendant company and not one of its officers or agents, unless it be followed by proof that the information conveyed by Mr. Dillon was by him communicated to the officers of the company.

By plaintiff's counsel : The purpose of this offer is to show that Dillon, who has been proved to be the man in charge of the defendant company's line, was informed by the witness that the service pipe running into the witness's house was open, and that if there would be any danger of gas passing through this service pipe, witness's property might be in danger of being destroyed ; that he was then informed by Dillon that he proposed blowing the water out of the line at the other end of the T ; this to be followed by evidence that the next morning the same person (Dillon), being then in the employ of the defendant company and in charge of this line, came to the place where the T was, opened the valve leading into the service pipe of the witness's line, forcing gas into the house, and the loss was a consequence, and that this notice to the man in charge of the line was notice to the defendant company.

Objected to for the reasons that the testimony already shows and it is a fact that Mr. Mellon was the superintendent of the defendant company in charge of its property at Latrobe; that the person named Dillon was a lineman, as he is correctly described by the witness; that conversations with Dillon or in his presence cannot amount to notice to the defendant company of which he was not the agent. Neither can the defendant company be made liable for his declarations or his negligent acts not performed under the directions of the defendant, or in the line of his employment.

By the Court: We think, in view of the statement by the witness of the conversations, that Mr. Dillon, who appears to have been in charge of the line and making some repairs or changes on it, or, at all events, doing some work upon it, that his conversation is competent, with the witness representing the owner of the property, as part of the res gestæ, and it is competent also, with the offer indicated, to raise the question of whether the turning of the gas on, under the circumstances, in view of its condition, would be negligence or not; it would be a question perhaps for the jury; we are only now deciding upon the competency of the occurrence and conversations at the time this work was being done on the pipe line by Mr. Dillon; he was doing work or exercising control at the time over this particular part of the pipe line connecting with the service pipe to the plaintiff's house. Objection therefore overruled and exception. [2]

" Q. What did you tell him about the condition of your pipe at the house at that time ? A. I told Mr. Dillon that the service pipe run up into my house and was disconnected from the plumbing in the house and if there was any danger I would not make the connection at the road. He got down into the ditch and turned up the T of the service pipe to show me that the valve was in and unturned on the end of the T that I connected with, and that there couldn't possibly be any danger ; and then I told my plumbers or the men that were making the connection that they might go ahead and connect it up, and they did."

Defendant's points were, among others, as follows :

" 3. The plaintiff in this case, before he can recover, must show that the loss resulted solely from the negligence of the de-

fendant company, and that Mrs. Baker in no way contributed to her own loss by her own negligence. *Answer:* We cannot affirm this point in this way. We have told you in our general charge that the plaintiff can only recover after satisfying you that the loss resulted from the negligence of the defendant, which we have defined to you, and by showing such negligence prima facie they made out a case, and then it was incumbent upon the defendant company to raise a defence, and if they have shown that the plaintiff, Mrs. Baker, contributed in any degree to the loss or the accident, then the verdict must be for the defendant." [3]

"5. All the material facts of this case are entirely undisputed, there being absolutely no conflicting evidence as to a single fact. The evidence thus undisputed clearly establishes that on Nov. 10, 1886, the defendant company was carrying in its main line, on the Derry road, natural gas at high pressure, and was utilizing the pressure to blow the water out of its line. With full knowledge of both these facts, S. H. Baker, the husband and representative of Amanda M. Baker, on Nov. 10, 1886, laid a two inch line from the cellar of his house down to the gas main and connected the two. There was then a single valve between the service pipe so laid and the gas in the main; Mr. Baker having been told, by one Dillon, an employee and lineman of the defendant company, that this valve would remain closed, saw fit to rely upon this statement of Dillon, and neglected to protect his own property by the simple device of capping the pipe in his cellar, and allowed the same to remain open only a few feet distant from the cooking stove. On Nov. 11, 1886, the same Dillon, for the purpose of blowing the water out of the line, opened the valve referred to. The gas was thus allowed to flow into the cellar of the house, and having become ignited at the stove the explosion and fire followed. The evidence further shows that if Mr. Baker had taken the trouble to cap the pipe in the cellar, the accident could not have happened. These facts being undisputed, it becomes the duty of the court to declare the law arising thereon, and we now instruct you that the act of Mrs. Baker in allowing that pipe in her cellar to remain uncapped, amounted to negligence, and, as it unquestionably contributed to the accident, she could not recover in this action, and the present plaintiff, claiming through and

under her, cannot recover. *Answer :* To affirm this point would require the court to take the responsibility of deciding that the plaintiff was guilty of contributory negligence, under the circumstances, in leaving the space in the cellar between his pipe and the plumbing. This, under the circumstances, we refuse to do. While the facts in this behalf may be undisputed, yet, in connection with the situation and all the circumstances, it is a case proper to call to the aid of the court the common sense and judgment of the jury, not to pass upon the facts, but to pass upon the question whether there was a want of ordinary care, under the circumstances, shown by Mr. Baker. And in this behalf we quote from Schum v. Pennsylvania Railroad Company, 107 Pa. 12: 'But as we said in McCully v. Clarke, 40 Pa. 406, there are some cases in which the court can determine that omissions constitute negligence. They are those in which the precise measure of duty is determined, the same under all circumstances. When the duty is defined, a failure to perform it is of course negligence and may be so declared by the court.' Now, then, we cannot say what was the determinate duty of Mr. Baker under the circumstances, in view of the conversation had with Mr. Dillon, the lineman of the company, on the 10th of November, 1886, in leaving the pipe disconnected in his cellar. It is a question for the jury, in view of all the circumstances of the situation, to say whether it was negligence or not. If it was, and contributed in any degree to the result, then of course the plaintiff could not recover. Then we cannot say, as a matter of undisputed fact, that if a cap had been put upon the pipe in the cellar, that the accident would not have occurred ; and.in this connection all the evidence submitted to us is that of Albert Klingensmith, who says if such cap had been on, the explosion would not have occurred unless the pipe had bursted." [1]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 3) instructions ; (2) ruling on evidence ; quoting instructions, bill of exception and evidence.

*John B. Head, J. S. Moorhead* with him, for appellant, cited : Harris v. Commercial Ice Co., 153 Pa. 278 ; R. R. v. Enches, 127 Pa. 316 ; R. R. v. Cadow, 120 Pa. 559 ; R. R. v. Feller,

84 Pa. 229; Gramlich v. R. R., 9 Phila. 78; Erie v. Magill, 101 Pa. 616; McGill v. R. R., 152 Pa. 331; Myers v. B. & O. R. R., 150 Pa. 389; Warner v. Ry., 141 Pa. 615.

*Paul H. Gaither, J. A. Marchand* with him, for appellee, cited: McCully v. Clarke, 40 Pa. 406; Schum v. P. R. R., 107 Pa. 12; P. R. R. v. Peters, 116 Pa. 206; R. R. v. Jones, 128 Pa. 308; Fisher v. Ry., 131 Pa. 292; McGill v. R. R., 152 Pa. 331.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 23, 1893:

This case involved the question of defendant company's negligence, causing the injury complained of, and also contributory negligence of the legal plaintiff.

An examination of the testimony with special reference to these inquiries, has satisfied us that they were both questions of fact, peculiarly within the province of the jury, and solely for their consideration and determination. As to the first, the testimony is such that the jury could not hesitate in finding against the defendant. Indeed, the carelessness of its employees was so gross as to amount almost to criminal negligence. The evidence as to the plaintiff's contributory negligence is comparatively slight, but it was sufficient to carry the case to the jury. Both questions were fairly and fully submitted to them in an elaborate charge, of over fourteen printed pages, in which their attention was specially called to the facts and circumstances disclosed by the testimony. Presumptively, the verdict is predicated of their finding that defendant company's negligence was the cause of injury, and that plaintiff was not guilty of contributory negligence. This appears to be in full accord with the weight of the testimony.

The first specification charges that the court erred in refusing to affirm defendant's fifth point recited therein. In that point the court was requested to charge, as matter of law, that certain acts of Mrs. Baker, done by her agent, constituted contributory negligence, and that there could be no recovery. The learned judge's answer, embodying his reasons for refusing to affirm said point, is in itself a sufficient vindication of his ruling. Some of the allegations of fact bearing on the question of contributory negligence were neither admitted nor proved, and hence it was necessary for the jury to pass upon them.

Inferences of fact had to be drawn from undisputed facts and circumstances considered in connection with such other facts as might be found by the jury. Moreover, the case is not one in which the standard of duty is fixed and determinate. As was said in McCully v. Clarke, 40 Pa. 406 : " When a duty is defined, a failure to perform it is of course negligence and may be so declared by the court. But, when the measure of duty is not unvarying, where a higher degree of care is demanded in some circumstances than under others, where both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligence and whether it has been proved." The principle, thus clearly stated by Mr. Justice STRONG, has been recognized in many cases, among which are Schum v. Penna. R. R. Co., 107 Pa. 12 ; Railroad Co. v. Peters, 116 Pa. 206 ; Railroad Co. v. Jones, 128 Pa. 308 ; Fisher v. Railway Co., 131 Pa. 292. In the case last cited, it was said : " When the facts are admitted or so clearly and conclusively proved as to admit of no reasonable doubt, it is the duty of the court to declare the law applicable to them ; but, when material facts are disputed, or even in doubt, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what the facts are, and apply them to the law as declared by the court." Further consideration of the subject is unnecessary. There was no error in refusing to affirm the point as presented.

The second specification alleges error in admitting " the testimony of S. H. Baker as to the conversation that occurred between him and Dillon," the nature and character of which are fully set forth in the specification. The testimony was both relevant and competent, and hence there was no error in admitting it. If the evidence tending to show Dillon's relation to the company defendant was believed by the jury, he was, pro hac, the representative of the company, acting within the scope of his employment, and hence his principal would be affected by his acts and declarations. To have excluded the testimony of the witness would have been error.

There is no error in the learned judge's answer to defendant's point recited in the third and last specification. The vice of the point, as presented, is that it puts upon the plaintiff the burden of proving a negative, viz. : " that Mrs. Baker in no way

contributed to her own loss by her own negligence." Contributory negligence is matter of defence, and the onus probandi is on the defendant, unless the plaintiff's own evidence sufficiently discloses the fact of contributory negligence. In that event, the plaintiff cannot recover, and of course defendant is relieved from the necessity of proving what has already been established by the plaintiff's evidence. If, however, the plaintiff makes out a prima facie case, without disclosing contributory negligence, the defendant must assume the burden of making out his defence: Canal Co. v. Bentley, 66 Pa. 30, 33.

There appears to be nothing in the record that would justify a reversal of the judgment, and it is therefore affirmed.

Judgment affirmed.