CALLAHAN, APPELLANT, *v.* CHICAGO, BURLINGTON & QUINCY R. CO., RESPONDENT.

(No. 3,247.)

(Submitted April 16, 1913.    Decided May 17, 1913.)

[133 Pac. 687.]

*Personal Injuries—Master and Servant—Railroads—Evidence— Declarations—When Admissible—Res Ipsa Loquitur.*

Declarations—When Admissible in Evidence.
1. While declarations, to be admissible as part of the *res gestae,* need not have been strictly contemporaneous with the main incident which gave rise to them, they must have been made while the mind of the speaker was laboring under the excitement aroused by the incident, before there was time to reflect and fabricate.

Same—Admissibility—Discretion.
2. The admissibility of declarations in evidence is largely a matter of sound legal discretion in the trial court, subject to review only in case of manifest abuse thereof.

Personal Injuries—Master and Servant—Railroads—Declarations—Admissibility.
3. Declarations of a freight train conductor made a half hour or more after an accident to his train upon inquiry by plaintiff, a section foreman who sustained injuries while riding thereon, and of a roadmaster, who did not witness the accident but learned of it after it reached its destination, to the effect that the accident was due to a defective coupler, though inadmissible as part of the *res gestae, held* competent as admissions by agents of defendant company made within the scope of their employment while engaged in the discharge of their duties.

Same—*Res Ipsa Loquitur*—Applicability of Doctrine.
4. If in a personal injury action by an employee against his employer, the facts and circumstances brought out on the trial tend to show that the instrumentality which caused the injury was exclusively in the control of the employer and the accident occurred because of some defect

therein, the existence of which was attributable to a negligent omission of duty by the latter, rather than to any other cause, the burden devolves upon him to rebut the presumption of negligence thus raised, by explaining the circumstances so as to render their existence consistent with the exercise of due care on his part.

Same.

5. *Held,* under the doctrine of *res ipsa loquitur,* that a nonsuit was improperly granted in an action by a railroad employee against the company where plaintiff's proof tended to show that the accident was due to a defective coupler, thus pointing to neglect on the part of defendant to perform a primary nondelegable duty, *i. e.,* to see that the train on which plaintiff was riding was equipped with sound and suitable appliances.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by Matthew Callahan against the Chicago, Burlington & Quincy Railroad Company. From a judgment of nonsuit plaintiff appeals. Reversed and remanded.

*Messrs. Enterline & La Fleiche,* and *Messrs. Walsh & Nolan,* for Appellant, submitted a brief; *Mr. E. E. Enterline* and *Mr. C. B. Nolan* argued the cause orally.

Were the declarations of the conductor and the roadmaster admissible? Any attempt to set exact limitations to the rule of *res gestae* is futile. Cases may be found denying the right to introduce declarations made within a few seconds after the occurrence to which they relate; others justify their admission several hours thereafter, some excluding statements made anywhere except at the very place of the incidents to which they relate, others at situations quite far removed; some rejecting answers to inquiries as distinguished from voluntary ejaculations, others admitting monosyllabic replies to leading questions.

It is submitted that while there must be reasonable propinquity in place and time, this is important only as it is calculated to make the comment readily credible as the unstudied outburst of guileless mind, instinctively truthful. "The modern tendency with respect to what is admissible as *res gestae* is inclined to be more liberal than the early rule which was quite closely confined to those declarations occurring during the actual continuance of the main event." (11 Ency. of Evidence, 297, 298;

*Jack* v. *Mutual Reserve Fund Life Assn.,* 113 Fed. 49–56, 51
C. C. A. 36.) ˙ The appellant directs the attention of the court
to some personal injury and death cases in which declarations
of the servants of the defendants, made some considerable time
after the injury, were held to be appropriate evidence. In
*Walters* v. *Spokane Ry. Co.,* 58 Wash. 293, 108 Pac. 593, the
statements of a conductor made about two hours after a derail-
ment, in which two of his crew were killed, were held properly
admitted. He told that the accident arose from the spreading
of the rails, and that the track was in bad condition. In *Roberts*
v. *Port Blakeley M. Co.,* 30 Wash. 25, 70 Pac. 111–113, the
declarations of the general superintendent of a railroad, made
about three hours after an accident, indicating that wheels of
inferior character were used by the company occasioning the
wreck, were held to have been properly admitted.

The declarations of a mine foreman made thirty minutes after
an accident were held admissible in *New York & C. M. S.* v.
*Rogers,* 11 Colo. 6, 7 Am. St. Rep. 198–200, 16 Pac. 719, 17
Morr. Min. Rep. 123. In *Dixon* v. *Northern Pac. Ry. Co.,* 37
Wash. 310, 107 Am. St. Rep. 810, 2 Ann. Cas. 620, 68 L. R. A.
895, 79 Pac. 943, the statement of a boy who was seriously
injured by being run over by a railroad train, made about ten
minutes after the accident occurred, to the effect that the brake-
man had kicked him off, was held properly admitted. The same
court in *Starr* v. *Aetna Life Ins. Co.,* 41 Wash. 199, 4 L. R. A.
(n. s.) 636, 83 Pac. 113, sanctioned the admission of the statement
of the victim of an accident made an hour after it occurred.
Declarations made after a similar lapse of time were admitted
and the ruling approved by the same court in *Lewis* v. *State,* 29
Tex. App. 201, 25 Am. St. Rep. 720, 15 S. W. 642. The case of
*Missouri K. & T. Ry. Co.* v. *Vance* (Tex. Civ. App.), 41 S. W.
167, is of value in that the declarations there admitted related
to the cause of the accident.

In *Rothrock* v. *Cedar Rapids,* 128 Iowa, 252, 103 N. W. 475,
a half an hour elapsed between the occurrence and the declara-
tions admitted which constituted all the evidence there was in ˙
the case as to the happening to support the verdict. (See, also,

*Johnson* v. *State*, 8 Wyo. 494, 58 Pac. 761; *State* v. *Horan*, 32 Minn. 394, 50 Am. Rep. 583, 20 N. W. 905.)    In a number of the cases above referred to, the injured party, being the declarant, died shortly after of his injuries; that fact, though proper to be taken into consideration in determining the likelihood of the truthfulness of the statement, is of itself unimportant, however.    (See 11 Ency. of Evidence, 333.)

Appellant was to all intents and purposes a passenger, whether technically so or not.    As to that the authorities are in conflict, as will appear from 3 Thompson on Negligence, 2654, 2655.    The following cases hold that so far as the question of the liability of the carrier is concerned, one occupying the position of the appellant at the time he was hurt has the status of a passenger. (*Doyle* v. *Fitchburg R. Co.*, 162 Mass. 66, 44 Am. St. Rep. 335, 25 L. R. A. 157, 37 N. E. 770; *Haas* v. *St. Louis & S. Ry. Co.*, 111 Mo. App. 706, 90 S. W. 1155; *Chattanooga R. T. Co.* v. *Venable*, 105 Tenn. 460, 51 L. R. A. 886, 58 S. W. 861; *Johnson* v. *Texas Central Ry. Co.*, 42 Tex. Civ. App. 604, 93 S. W. 433; *Harris* v. *City & E. G. R. Co.*, 69 W. Va. 65, Ann. Cas. 1912D, 59, 70 S. E. 859; *Gregory* v. *Granite R. Co.*, 132 Ga. 587, 64 S. E. 686; *Kilduff* v. *Boston E. Ry. Co.*, 195 Mass. 307, 9 L. R. A. (n. s.) 873, 81 N. E. 191; *Indianapolis Traction & T. Co.* v. *Romans*, 40 Ind. App. 184, 79 N. E. 1068; *Harris* v. *Puget Sound E. R. Co.*, 52 Wash. 299, 100 Pac. 841; *Hebert* v. *Portland R. Co.*, 103 Me. 315, 125 Am. St. Rep. 297, 13 Ann. Cas. 886, 69 Atl. 266; *Gray* v. *Columbia R. Co.*, 49 Or. 18, 88 Pac. 297; *Enos* v. *R. I. Suburban R. Co.*, 28 R. I. 297, 67 Atl. 5; *McNulty* v. *Pennsylvania R. Co.*, 182 Pa. 479, 61 Am. St. Rep. 721, 38 L. R. A. 376, 38 Atl. 524.)

The complaint in this cause is framed so as to invoke the federal Employers' Liability Act, by which the defense of fellow-servant is abolished.    Some claim was made at the trial that the appellant did not come within the class of those who are or could be protected by a national law, but since the recent decisions of the supreme court of the United States under the Act in question, the subject is not open to controversy.    (See *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 56 L. Ed. 327,

38 L. R. A. (n. s.) 44, 32 Sup. Ct. Rep. 169; *Zikos* v. *Oregon R. & N. Co.,* 179 Fed. 893.)    A track worker was held entitled to recover under the Act in *Colasurdo* v. *Central R. R.,* 180 Fed. 832.    The decision in this case was affirmed in 192 Fed. 901, 113 C. C. A. 379.    A very marked difference of opinion concerning the scope of the Act in question prevails in the federal courts as shown in the opinion in *Darr* v. *Baltimore & O. R. Co.,* 197 Fed. 665, but none of the rulings would exclude the present case from its operation.    In *Northern Pac. Ry. Co.* v. *Maerkl,* 198 Fed. 1, 117 C. C. A. 237, the circuit court of appeals again considered the statute, and held it applicable to a car repairer at work on a car used indiscriminately in interstate and in intrastate commerce.

*Messrs. Gunn, Rasch & Hall, Mr. O. F. Goddard,* and *Mr. E. T. Clark,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The declarations of the conductor and the roadmaster were inadmissible.    They were neither a part of the *res gestae* nor was there any showing made making them competent as admissions of an agent in the course of his employment and within the scope of his authority.    It is settled law in this jurisdiction that: "To bind the principal, the declarations of an agent must be made within the scope of his authority, at the time of the transaction, and be a part of the *res gestae.*    If made after the transaction is completed, they are in the nature of hearsay, and are mere narrations of a past transaction."    (*Hogan* v. *Kelly,* 29 Mont. 485, 489, 75 Pac. 81; see, also, *Ryan* v. *Gilmer,* 2 Mont. 517, 25 Am. Rep. 744; *Poindexter & Orr etc. Co.* v. *Oregon S. L. R. Co.,* 33 Mont. 338, 340, 83 Pac. 886; *Durkee* v. *Central Pac. Ry. Co.,* 69 Cal. 533, 58 Am. Rep. 562, 11 Pac. 130; *Herman Waldeck & Co.* v. *Pacific Coast S. S. Co.,* 2 Cal. App. 167, 83 Pac. 158, 159; *Boone* v. *Oakland Transit Co.,* 139 Cal. 490, 73 Pac. 243; *Luman* v. *Golden etc. Min. Co.,* 140 Cal. 700, 74 Pac. 307; *Morse* v. *Consolidated Ry. Co.,* 81 Conn. 395, 71 Atl. 553; *Redmon* v. *Metropolitan St. R. Co.,* 185 Mo. 1, 105 Am. St. Rep. 558, 84 S. W. 26; *Cincinnati etc. Ry. Co.* v. *Martin,* 146 Ky. 260,

142 S. W. 410; *Parker* v. *Winona etc. Ry. Co.,* 83 Minn. 212, 86 N. W. 2; *Ft. Wayne etc. Traction Co.* v. *Crosby,* 169 Ind. 281, 14 Ann. Cas. 117, 13 L. R. A. (n. s.) 1214, 81 N. E. 474; *Clark* v. *Van Vleck,* 135 Iowa, 194, 112 N. W. 648; *Blackman* v. *West Jersey etc. R. Co.,* 68 N. J. L. 1, 52 Atl. 370.)

The federal Employers' Liability Act makes a common carrier by railroad, while engaging in commerce between the states, liable for injuries sustained by its employees while employed by such carrier in such commerce, but leaves unaffected, and as fully available as at common law, the defense of assumption of risk, except in cases "where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." The Act does not give a right of action against the carrier merely because of the infliction of an injury by reason of defective appliances, but only where such defects were "due to its negligence." The statute requires a showing by pleading and proof, not only that a defect existed which caused the injury, but that the defect was one due to defendant's want of proper care. An attempt to meet these requirements is made in the complaint, but having failed in the proof, the doctrine of *res ipsa loquitur* is invoked, and it is contended that the parting of the train of and by itself gives rise to a presumption that the appliances were defective, due to defendant's negligence. The rule, however, is well settled that "no presumption of negligence arises in cases of injuries from defective machinery or other appliances where the thing is not inherently dangerous." (29 Cyc. 595; *Edgens* v. *Gaffney Mfg. Co.,* 69 S. C. 529, 48 S. E. 538.) So that, even if the mere parting of the train afforded the basis for an inference that it was caused by a defective coupling or other appliance, there would still be the further presumption that the defendant had no notice of such defect, and as to that feature of the case neither the complaint states sufficient facts (*McEnaney* v. *Butte,* 43 Mont. 526, 117 Pac. 893; *Phillips* v. *Butte Jockey Club,* 46 Mont. 338, 127 Pac. 1011), nor was proof made, or offered to be made, to meet that presumption. There could be no liability, under conditions like the present, because of a defective appliance, caus-

ing the parting of the train, unless the carrier knew, or in the exercise of ordinary care should have known, of its existence. In such case the doctrine of *res ipsa loquitur* cannot be invoked and does not apply. (*Byers* v. *Carnegie Steel Co.,* 159 Fed. 347, 16 L. R. A. (n. s.) 214, 86 C. C. A. 347.)

It was held in the case last cited that the presumption does not arise, unless "the evidence excludes all other causes for the accident." Nor would proof of a defective appliance suffice. (*McGrath* v. *St. Louis Transit Co.,* 197 Mo. 97, 94 S. W. 872; *Moriarity* v. *Schwarzschild & Zulzberger Co.,* 132 Mo. App. 650, 112 S. W. 1034; *Hamilton* v. *Kansas City etc. R. Co.,* 123 Mo. App. 619, 100 S. W. 671; *St. Louis etc. Ry. Co.* v. *Cason* (Tex. Civ. App.), 129 S. W. 394.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by the plaintiff for damages for personal injuries suffered by him during the course of his employment by the defendant. The accident occurred on September 20, 1909. The defendant owned and was operating a line of railway extending through the states of South Dakota, Wyoming and into and through portions of the state of Montana, and was engaged as a common carrier in interstate commerce. The plaintiff was in its employ as extra gang foreman, having under his charge a crew of laborers engaged in making repairs upon its tracks. He and the crew were required to occupy and live in outfit cars so that they could be readily moved from place to place as the exigencies of their service required. One of these cars was occupied by plaintiff and his wife. It was fitted up with a stove, bedding and other household furniture necessary to make it habitable. On the day of the accident the cars were being transferred from Dewey, South Dakota, to New Castle, Wyoming, so that the crew could effect repairs near the latter place. They were attached to the rear end of a freight train consisting of fifty-one cars. At a point about seven miles east of Dewey, while ascending a grade, the train parted, with the result that by the sudden stoppage occasioned by the automatic setting of the air-brakes, the

plaintiff was thrown violently back and against a box in the rear end of the car and thereby suffered the injuries complained of. It is alleged that the defendant was negligent in placing in the train a car equipped with a coupler which was unsafe, defective and insecure, in that the part thereof known as the lock-block had become worn and loose, a fact which was known to the defendant, or, by the exercise of ordinary diligence on its part, ought to have been known to it, but was not known to the plaintiff. The complaint then alleges:

"Sixth. That on the said 20th day of September, 1909, while said train was being moved by the defendant along and upon its said track and railroad from Dewey, South Dakota, to New Castle, Wyoming, at a rate of speed of about twenty miles per hour, the said coupler upon said car in said train by reason of its being defective, worn and insecure, and because the defendant carelessly and negligently failed and neglected to keep the same in good repair and in a safe and sound condition, and because of the negligent and careless operation of said train by said defendant, loosened and came apart causing the said train instantly to part, thereby breaking the air-hose of said train which controlled the brakes upon the cars. That the parting of said train and the breaking and separating of said air-hose caused the brakes upon the cars to which said outfit car was still attached, including the brakes on said outfit car, to become suddenly and violently set, thereby causing said train and cars last mentioned violently and suddenly to stop, whereby the said plaintiff was thrown with great force and violence backward a distance of about twelve feet along and in the interior of said car wherein he was then riding, against and upon a box in said car."

The answer denies all of the allegations of the complaint, except that it admits that at the time of the accident the defendant was engaged in interstate commerce. It alleges certain matters as affirmative defenses, upon which there was issue by reply. The issues presented on this branch of the case do not require notice. At the close of plaintiff's case, the court sustained a motion for nonsuit and directed judgment for the

defendant. This appeal is from the judgment. The two questions presented for decision are, whether the exclusion of certain evidence was error, and whether the evidence was sufficient to take the case to the jury.

1. During his examination in chief, counsel for plaintiff inquired of him whether he was acquainted with the duties of a conductor on the defendant's road. He was not permitted to answer. Counsel then offered to have him testify, in substance, that when such an accident as the one in question occurs it is the duty of a conductor to ascertain its cause, to restore the connection, if possible, and proceed with the train; to ascertain if any person has been injured, and, if so, also the nature and extent of the injury, and to make full report of the facts to his superior officers; that when the train parted, the conductor at once proceeded forward from the caboose where he then was, to ascertain the cause; that in passing the car in which plaintiff and his wife were he ascertained that plaintiff had been injured; that he then said that he was going forward to inquire the cause of the accident; that, the connection being restored, the train proceeded immediately to New Castle, arriving there thirty or forty minutes later; that the conductor then returned to the plaintiff's car and made inquiry as to the extent of the injury in order to make his report of it, and that during the course of the inquiry, in response to a question by plaintiff as to the cause of the accident, he said that the train had parted "because of a defective coupler; a worn lock-block." An offer was also made to show by this witness that a similar duty to investigate and make report is required of a roadmaster; that when the train arrived at New Castle, defendant's roadmaster came to plaintiff's car and, after inquiry as to the nature and extent of the injury, wrote out his report; and that while so doing he stated to plaintiff that the parting of the train was caused by a "defective coupling; a worn lock-block." This evidence was excluded on the ground that the declarations were not part of the *res gestae,* and were therefore incompetent.

The statute provides that where "the declaration, act or omission forms part of a transaction, which is itself the fact in dis-

pute, or evidence of that fact, such declaration, act or omission is evidence, as part of the transaction.'' (Rev. Codes, sec. 7867.) This provision was not intended to embody the statement of a rule by which to determine the competency of such declarations as those in question, but to be a mere direction that they must be deemed competent when they are so connected with the main transaction as to form a part of it. It states one of the exceptions to the general rule recognized by all the courts in common-law jurisdictions which requires the exclusion of hearsay statements, *viz.*: that when declarations by the participant in or an observer of the litigated act are so nearly connected with it in point of time that they may be regarded as a spontaneous, necessary incident, explaining and characterizing it, they may be proved as a part of it without calling the person who made [1] them. The principle upon which the exception is founded is that the declarations were made while the mind of the speaker was laboring under the excitement aroused by the incident, before there was time to reflect and fabricate, and hence the solemnity of the oath is not necessary to give it probative value. Such statements need not be strictly contemporaneous with the main incident. They may be in the form of narrative; yet if the circumstances show they were made while the excitement produced by the incident still dominated the mind and was the producing cause, they are nevertheless part of the main incident and competent. On the contrary, if they are in fact mere narrative, they are not competent. In *State* v. *McDaniel*, 68 S. C. 304, 102 Am. St. Rep. 661, 47 S. E. 384, the court said: ''If the declarations are a mere narration of a past occurrence they are not admissible as *res gestae*. When the declarations are not precisely concurrent with the transaction, a delicate and complex question is presented to the trial judge in determining their admissibility, and each case must be decided upon its own circumstances. In the nature of the case, there can be no hard-and-fast rule as to the precise time near an occurrence within which declarations explanatory thereof must be made in order to be admissible. The general rule is that the declarations must be substantially contemporaneous with the litigated transaction and

be the instinctive, spontaneous utterances of the mind while under the active, immediate influence of the transaction, the circumstances precluding the idea that the utterances are the result of reflection or design to make false or self-serving declarations. * * * Questions of this kind must be very largely left to the sound judicial discretion of the trial judge, who is compelled to view all the circumstances in reaching his conclusion, and this court will not reverse his ruling, unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be." The tendency of recent decisions is to relax the rule of admissibility rather than to restrict it, and to consider the weight to which the evidence is entitled. (*Jack* v. *Mutual Reserve Fund Assn.,* 113 Fed. 49, 51 C. C. A. 36, and cases cited.) Accordingly, this court in *State* v. *Tighe,* 27 Mont. 327, 71 Pac. 3, held that, as in case of confessions, it is the province of the trial judge to determine *in limine* the admissibility of declarations and leave the question of their weight to the jury, in view of the circumstances under which they were made. This must necessarily be the case whenever a question of fact arises upon conflicting evidence as to whether they are part of the *res gestae,* or depends upon contradictory inferences either of which may fairly be drawn from [2] uncontradicted evidence; and since this is so, the solution of the question of the admissibility of such evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in cases of manifest abuse. (3 Wigmore on Evidence, sec. 1750; *State* v. *McDaniel, supra*; *Walters* v. *Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593.)

Even under this liberal rule, however, we do not think the [3] declarations admissible on the theory that they were prompted by the excitement produced by the accident itself. The conductor did not return to plaintiff's car until the train had reached New Castle, some half hour or more after the accident. Apparently, he would not have spoken on the subject at all if he had not been questioned by the plaintiff. His statement assumed the form of narrative, rather than that of a spontaneous

utterance as a necessary incident of the accident itself explaining and characterizing it. The roadmaster did not witness the accident but learned of it after the train had reached New Castle. His statement, therefore, could not have been due to any excitement aroused by his witnessing the accident or his presence when it occurred. But we think the evidence competent upon another theory, *viz.,* as admissions by the agents of the defendant within the scope of their employment while engaged in the discharge of their duties. Whether it was in fact among the duties of these employees to ascertain the cause of the accident and the nature and extent of any injury caused by it and make report to their superior officers, we need not stop to inquire. The plaintiff offered to show that this was so. If such was the case, the statements were made while these employees were in the discharge of their duties. Now, it is a well-settled rule that when an agent is vested with authority to perform any act for his principal, his words—his verbal acts—while engaged in that business, are a part of the *res gestae* of that business. They are therefore the words and acts of the principal and may be proved against him. (*Hogan* v. *Kelly,* 29 Mont. 485, 75 Pac. 81; *Hupfer* v. *National Distilling Co.,* 119 Wis. 417, 96 N. W. 809; *Hyvonen* v. *Hector Iron Co.,* 103 Minn. 331, 123 Am. St. Rep. 332, 115 N. W. 167; *Turner* v. *Turner,* 123 Ga. 5, 107 Am. St. Rep. 76, 50 S. E. 969; *Lynchburg Tel. Co.* v. *Booker,* 103 Va. 594, 50 S. E. 148; *Baker* v. *Westmoreland etc. Gas Co.,* 157 Pa. 593, 27 Atl. 789; *Anderson* v. *Great Northern Ry. Co.,* 15 Idaho, 513, 99 Pac. 91; *Leach* v. *Oregon S. L. R. Co.,* 29 Utah, 265, 110 Am. St. Rep. 708, 81 Pac. 90; *Redmon* v. *Metropolitan St. Ry. Co.,* 185 Mo. 1, 105 Am. St. Rep. 558, 84 S. W. 26; *McNicholas* v. *New England T. & T. Co.,* 196 Mass. 138, 81 N. E. 889.) For the time being the agent is the *alter ego* of the principal, and while he is not employed to talk about the business of his principal or to admit away the rights of the latter, declarations and admissions by him touching the business in hand *dum fervet opus,* are those of the principal. "This rule is especially applicable to corporations, which can speak and act only through agents. Justice to the rights of others requires

that acts of such intangible entities must be significant, and the basis for conduct by others as in the case of individuals. When, therefore, a corporation selects an individual to do an act in its behalf, the individual, in doing that act, *i. e.,* within the scope of his authority, is, in legal effect, the corporation." (*Hupfer* v. *National Distilling Co., supra.*) If, however, the appointed work has been completed, any statement made by the agent with reference to it is, under all the authorities (2 Chamberlayne's Law of Evidence, sec. 1346), a mere narrative of a past transaction and is not admissible under the *res gestae* rule. It is, as to the principal, mere hearsay.

Counsel for defendant cite and rely on the cases of *Ryan* v. *Gilmer,* 2 Mont. 517, 25 Am. Rep. 744, and *Poindexter & Orr L. S. Co.* v. *Oregon Short L. R. Co.,* 33 Mont. 338, 83 Pac. 886. In the latter of these cases the person whose declaration was held incompetent was not the agent of the corporation to do the act with reference to which the declaration in question was made. With reference to the former, it may be noted that the admission held incompetent was made by the driver of a vehicle immediately after it had been overturned, the accident resulting in injury to a passenger, and while the driver was still in charge of it. Under the more liberal rule observed by many of the courts, the evidence was competent. The case serves only to illustrate the difficulty the courts have experienced in ascertaining and declaring any definite rule by which to determine whether the admission under consideration was or was not made while the agent was acting within the scope of his authority. It is not in point, because, as we have shown, the declarations in question here were made while the conductor and roadmaster were in the actual discharge of the duties delegated to them. The exclusion of the evidence was error.

2. Counsel contend that inasmuch as the parting of a train is not an ordinary occurrence in the operation of railroads, the fact that such an accident occurred in this instance, there being no explanation of the cause of it, was sufficient to raise a presumption of negligence by the defendant or some of its servants, and therefore that a case was made for the jury without regard

to the excluded evidence. They insist upon two propositions, either of which, if accepted as sound, they say, will require a reversal of the judgment in this case, *viz.:* (1) That plaintiff for the time being occupied the position of a passenger; hence the presumption of negligence arising from the happening of the accident made out a *prima facie* case; (2) that the reason for indulging this presumption in favor of a passenger and not in favor of a servant is that an accident may be due as well to the negligence of a fellow-servant as to the lapse of duty by the carrier with reference to some nondelegable duty; that this action was brought under the federal Employers' Liability Act (25 Stats. at Large, 65, 1909 Supp. Fed. Stat. Ann., p. 584), which cuts off the defense of negligence by a fellow-servant; and that, since this is so, logically. the same presumption must be indulged in favor of the servant as in favor of the passenger. We shall not undertake to determine at this time whether these contentions are maintainable. We think both of them involve questions which are at least debatable. Upon the presumption that the plaintiff proved his case according to his offer, however, we think he was entitled to go to the jury without regard to the theory advanced by counsel in either of these contentions.

For present purposes we shall assume that it is settled law that in an action by a servant against his employer for an injury caused by the negligence of the latter, proof of the accident alone does not furnish a basis for an inference of culpable [4] negligence, but that the servant must go further and show by direct proof, or by circumstances, that his injury sprang wholly or partly from some omission of duty by his employer. If he fails to do this he has failed to make a case for the jury. If, however, in proving the injury, the facts and circumstances disclosed tend to show that the instrumentality which caused the injury was exclusively in the control of the employer and the injury occurred by reason of some defect therein, the existence of which is attributable to a negligent omission of duty by the employer rather than to any other cause, he has made a case justifying a presumption of culpable negligence. The burden then devolves upon the employer to rebut the presumption, by

explaining the circumstances so as to render their existence consistent with the exercise of due care. The general rule applicable to this class of cases, *viz.:* that the plaintiff must prove negligence, is qualified by way of exception by what is termed the doctrine of *res ipsa loquitur,* which means merely that the circumstances under which the accident occurred charge the defendant with culpable negligence. In *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29, the rule is stated thus: "Of course, the general rule of law is that negligence is not inferable from the mere occurrence of the accident; but to this rule is the well-understood exception that, where the thing which causes the injury is shown to be under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have such management and control use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of ordinary care by the defendant. (1 Shearman & Redfield on Negligence, sec. 59.) Under such circumstances proof of the happening of the event raises a presumption of the defendant's negligence, and casts upon the defendant the burden of showing that ordinary care was exercised. This rule has been invoked in numerous similar cases." The train upon [5] which plaintiff was riding was under the control and management of the defendant. The defendant knew, or ought to have known, by whom it was made up, how it was made up, how it was equipped and what degree of care had been exercised in making it safe to run. The duty to see that it was properly equipped was a primary, nondelegable duty of defendant. It separated because of a "defective coupler or worn lockblock." Ordinarily, when a train is equipped with couplers which are sound and suitable for use, it does not part. Therefore, the fact that one of those in use at the time of the accident was defective and worn to such an extent as to permit the train to part, points to neglect by defendant to perform a primary duty rather than to any other cause, and properly calls for explanation. In the absence of such explanation the jury would be justified in holding it responsible for the accident and the

injury resulting from it. (*Griffin* v. *Boston & Albany R. Co.,* 148 Mass. 143, 12 Am. St. Rep. 526, 1 L. R. A. 698, 19 N. E. 166, and cases cited.)

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.