## READING CO. v. LARKIN.
### No. 7188.

Circuit Court of Appeals, Third Circuit.
July 17, 1940.

Rehearing Denied Sept. 11, 1940.
Writ of Certiorari Denied Nov. 25, 1940.

See 61 S.Ct. 175, 85 L.Ed. ——.

John T. Brady, of Harrisburg, Pa., for appellant.

George Kunkel and Walter H. Compton, both of Harrisburg, Pa., for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

## JONES, Circuit Judge.

The plaintiff, Larkin, an employee of the defendant company, instituted suit for damages in the court below under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries alleged to have been caused by the negligence of his employer, an interstate carrier. The jury returned a verdict in favor of the plaintiff whereon the court below entered judgment; and, from that judgment, the defendant took the present appeal. The appellant contends that the evidence adduced at trial was not sufficient to sustain the finding, implied by the jury's verdict, that the plaintiff was engaged in interstate commerce at the time of his injury (see requirements of Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51), and, also, that testimony with regard to the intended use of one of the cars in the movement whereof the plaintiff was engaged at the time of his injury was improperly received in evidence and that the court below erred in its answers at trial to certain requests for charge presented by the defendant.

Shortly after the shifting crew, of which Larkin was a member, went to work in the railroad yards of the defendant company at Rutherford, Pennsylvania, on the morning of January 9, 1937, the crew conductor informed Larkin that they were to go in on the "power house" siding to obtain an empty coal car and a car of ashes and then proceed to track 17 where they were to get a gondola car loaded with coal and a company tool car. Track 17 connected with a main running or thoroughfare track in the yards. According to Larkin, the conductor said that the empty coal car on the "power house" siding was to be placed under the tipple at the loading dock to receive a load of coal contained in a defective or "crippled" car then standing on the tipple. The appellant denies the competency of this testimony. After pulling the empty coal car and ash car out of the "power house" siding onto the thoroughfare track, the engine backed these cars along the thoroughfare track for the purpose of picking up the loaded coal car and tool car standing on track 17. Larkin testified that in order to keep the empty coal car at the end of the line so that, being in foremost position, it might be pushed in on the siding at the tipple after the two other cars on track 17 had been joined to the draft, the empty coal car and car of ashes were cut free when the engine had about reached the switch on the thoroughfare track connecting with track 17. The two cars, thus cut off from the engine, moved forward a little distance under their own momentum until brought to a stop on the thoroughfare track by Larkin's application of the hand brake on the empty coal car. The engine stopped just short of the switch leading to track 17 so as to move in on that track to withdraw the loaded coal car and the tool car after the switch had been turned. When Larkin had brought the empty coal car and car of ashes to a stop on the thoroughfare track, he walked over to help in the removal of the cars from track 17, next adjacent. As he was ascending the ladder on the end of the tool car to release the hand brake on the top of that car, the en-

gine, moving in on track 17, hit the two cars with such violent impact as to throw him to the track between the cars, where the loaded coal car ran over and severed one of his arms.

This brings us to a consideration of the use and intended disposition of the four cars in the movement whereof Larkin was engaged at the time of his injury. The car of ashes and the company tool car were being prepared for movement from the yards to destinations within the state; and, except for the fact that the tool car was later placed in an interstate train for its intended movement within the state, neither of these cars figured in a movement forward of interstate commerce.

Of the two remaining cars, the empty coal car (Reading No. 73165) and the loaded coal car (Reading No. 24626), the lading in the latter car had, admittedly, been the subject of an interstate shipment. It is the appellant's contention, however, that the interstate character of the shipment had ceased, prior to Larkin's injury, under the following circumstances. The coal in car No. 24626 had been shipped by a consignor in West Virginia to itself at Port Reading, New Jersey, in B. & O. car No. 327256. While in transit over the defendant company's lines, the B. & O. car was derailed, near the Rutherford yards, where its cargo was spilled upon the ground. That occurred on December 7, 1936. Shortly thereafter, the coal was reloaded in car No. 24626 and was moved to the Rutherford yards. On December 11th, the defendant company notified the consignor of the accident to the B. & O. car and requested that claim for the value of the coal be made; and on December 29th the consignor forwarded its formal claim (dated December 22nd) which was received by the defendant on December 30th. No acceptance of the consignor's claim or offer of settlement was communicated by the defendant to the consignor, but, on January 21, 1937, the claim was "approved for voucher" by the defendant company. Larkin had been injured on January 9th preceding; and car No. 24626 was shipped by the defendant company from the Rutherford yards, Pennsylvania, to itself at Gettysburg, Pennsylvania, on a way-bill dated January 14th (five days after Larkin's injury). The defendant company's "wheel report" showed that the car actually moved out of the Rutherford yards to Gettysburg on January 13th.

The trial court left it to the jury to determine whether there had been any change, up to the time of Larkin's injury, with respect to the original destination of the coal then contained in car No. 24626. We see no error in the court's action in such regard, at least, none whereof the defendant might justly complain. The interstate character of the shipment of coal, which had attached when it was consigned in West Virginia for delivery in New Jersey, was bound to continue until the coal reached the point where the parties originally intended that the movement should end or until the movement was definitely arrested or terminated by action otherwise of the parties. See Binderup v. Pathé Exchange, 263 U.S. 291, at page 309, 44 S.Ct. 96, 68 L.Ed. 308, and cases there cited.

The action of the parties, upon which the defendant here relies to establish a termination of the movement forward of the "spilled coal", is the change in ownership brought about by the defendant's purchase of the coal. However, that did not take place until some time after Larkin was injured. The defendant's agreement to purchase the coal contemplated performance in Pennsylvania; and the law of that state controls in determining when the defendant's title to the coal became consummate and, by the same token, the consignor's title ceased. See Restatement of the Law, Conflict of Laws, § 358. The defendant's request of the consignor that it submit a claim for the coal was too indefinite to be considered an offer. Restatement of the Law, Contracts, § 25; Brown v. Finney, 53 Pa. 373; Vitro Mfg. Co. v. Standard Chemical Co., 291 Pa. 85, 139 A. 615. A mere indication of a desire to make an arrangement does not constitute an offer. Miller v. Mackey, 204 Pa. 345, 54 A. 171. The defendant's request of the consignor amounted to no more than an expression of the defendant's willingness to receive an offer; and, if an offer was forthcoming, the defendant was free to reject it. The salvaged coal could still be forwarded to its original destination if the defendant chose to answer to the consignor in damages for depreciation of the coal or delay in delivery. The first offer that was made was the consignor's action in submitting a claim for the value of the coal. And, while that offer was made before the accident, there was no acceptance by the defendant company, objectively evidenced so as to be conclusive

upon it, until a date several weeks after Larkin had received his injury. The transference of title by a sale requires a contract (Uniform Sales Act § 1, 69 P.S.Pa. § 1); and, to support a contract, an unqualified acceptance of an offer must be manifested. See Restatement of the Law, Contracts, § 29, illustration 1.

■ The evidence respecting the movement and ownership of the coal in car No. 24626 was not in dispute. It consisted of undisputed documentary proofs produced from the files and records of the defendant company. The question, therefore, as to when title to the coal passed to the defendant from the original consignor so as to divest the movement of its interstate character was a question of law which the trial court could have properly answered by instructing the jury that Larkin was engaged in interstate commerce at the time of his injury. Philadelphia & Reading R. Co. v. Hancock, 253 U.S. 284, 285, 40 S.Ct. 512, 64 L.Ed. 907. Consequently, the defendant was not harmed when the court permitted the jury to draw the same legal conclusion.

■ But, wholly apart from car No. 24626, there was still further evidence which fully justified the court's submission of the case to the jury. As we have seen, the empty coal car (Reading No. 73165) and the car of ashes, which the crew had taken from the "power house" siding, were left standing on the thoroughfare track, pending removal of the two cars from track 17 when Larkin received his injury. The accident to Larkin having interrupted the work of his crew, another crew was summoned to complete the movement of the two cars still standing on the thoroughfare track. Accordingly, "within twenty or thirty minutes" after the accident to Larkin, the substitute crew took the empty coal car from the thoroughfare track and placed it at the loading dock under the coal trestle, where it was to receive the cargo of coal from the "crippled" car standing on the tipple. All of this clearly appears from the testimony of the yard master, a witness for the defendant.

According to the defendant company's records, the coal in the "crippled" car on the trestle was in movement from West Virginia to New Jersey, and, on the same day that car No. 73165 was placed at the loading dock as above described, the coal in the "crippled" car was dumped into car No. 73165, which, thus loaded, moved forward on the succeeding day from the Rutherford yards to Jersey City, New Jersey, the destination of the shipment, where it was received two days later.

The yard master's testimony and the defendant company's records, to which we have just referred, justified an inference that car No. 73165 was being placed at the time of Larkin's injury for the movement forward of a cargo in interstate commerce. Grank Trunk W. R. Co. v. Boylen, 7 Cir., 81 F.2d 91. To hold otherwise would be tantamount to saying, as a matter of law, that cars are shunted about in railroad yards for no purpose and with no thought of their intended use. In any view, the evidence and the reasonable inferences to be drawn therefrom were matters for the jury. At best, the testimony for the defendant that the car was placed on the siding at the loading dock merely for storage did no more than raise an issue of fact and, the testimony being oral, it was peculiarly for the jury to say whether that testimony was believable. The jury having presumably found that car No. 73165 was being moved purposely by Larkin's crew to receive the cargo of coal from the "crippled" car then in transit from West Virginia to New Jersey, it was proper for the jury to conclude, under the court's instruction, that Larkin was engaged in interstate commerce at the time of his injury. Louisville & Nashville Railroad Co. v. Parker, 242 U.S. 13, 37 S. Ct. 4, 61 L.Ed. 119; New York Central & Hudson River R. Co. v. Carr, 238 U.S. 260, 35 S.Ct. 780, 59 L.Ed. 1298.

In addition to the yard master's testimony, to which we have referred, as to the intended disposition of car No. 73165, there is Larkin's testimony that, when he went to work on the morning of the accident, his crew conductor instructed him that they were to go in on the "power house" siding to get the empty coal car and to place it at the loading dock to receive the cargo of the "crippled" car on the coal trestle.

The appellant contends that the court below erred in admitting this testimony (1) because it is hearsay; and (2) because the conductor's statement was not within the scope of his authority and therefore not binding on the appellant "as tending to prove that the car had been assigned to interstate transportation at the time of the accident".

■■ When illustrative of a particular litigated act, testimony with respect to cir-

cumstances which are the undesigned incidents of the litigated act, is admissible, although hearsay, as part of the res gestæ. Coll v. Easton Transit Co., 180 Pa. 618, 626, 37 A. 89, 90. The qualifications which render the incidents of a litigated act admissible are "that they are part of the immediate preparations for or emanations of such act, and are not promoted by the calculated policy of the actors." Coll v. Easton Transit Co., supra. Here, the particular litigated act was the plaintiff's participation in the movement forward of commerce in transit between states. The conductor's statement with respect to the placing of the empty coal car in immediate preparation of the movement of the cargo was, therefore, admissible as a part of the res gestæ.

Nor do we agree with the appellant's contention that the conductor's statement was beyond the scope of his authority. What the conductor said was directly and pertinently related to the service to be performed by the shifting crew with respect to the placing of the empty coal car. It amounted to a declaration by a qualified agent of the defendant company as to the contemplated performance of work then to be undertaken under the direction and supervision of the declarant; and, as such, was competent evidence to define the work in which Larkin was engaged. York Mfg. Co. v. Chelten Ice Mfg. Co., 278 Pa. 351, 357, 123 A. 327; Baker v. Westmoreland & Cambria Nat. Gas Co., 157 Pa. 593, 600, 27 A. 789; Mellick v. Pennsylvania Railroad Co., 17 Pa.Super. 12, 21. In support of the contention that the conductor's statement was not binding upon the defendant company as tending to prove that the empty coal car had been assigned to interstate commerce at the time of Larkin's injury, the appellant cites Mirkowicz v. Reading Co., 3 Cir., 84 F.2d 537. But, there, the excluded statement of a yard master was objectionable because it contained a characterization of the car movement as being in interstate commerce. The statement in the Mirkowicz case was more than a direction with respect to the work to be done and how it was to be performed. It contained the added conclusion as to the ultimate fact with respect to the nature of the commerce involved, which it was the jury's duty to determine from the evidence in the case. No such objectionable conclusion is contained in the conductor's statement in the instant case. Whether the coal

in the car on the tipple was moving in interstate or intrastate commerce was not suggested by the conductor; nor did any one so testify. That the empty car be placed with relation to the car on the tipple was a reasonable and understandable order; and the defendant's records supplied the fact as to the intended movement of the car. In the Mirkowicz case it was said that,—"What he [the employee] did and that he did it by the direction of his employer was evidentiary", etc.

Such of the defendant's requests for charge as were refused by the trial court contained assumptions of fact favorable to the defendant based upon conclusions which were matters for the jury's consideration and determination. The court therefore properly refused the requests.

From a careful examination of the entire record, we are of the opinion that the case was fairly and impartially tried and submitted and that there is no merit in any of the appellant's contentions.

The judgment of the District Court is affirmed.