DA 06-0151

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 198

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

JOSEPH R. MARSHALL,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. CDC-04-258
                    Honorable Kenneth R. Neill, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Hooks & Wright, Helena, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; C. Mark Fowler,
          Assistant Attorney General, Helena, Montana

          Brant Light, County Attorney; John W. Parker, Joel Thompson
          and Susan Weber, Deputy County Attorneys, Great Falls, Montana


                    Submitted on Briefs:  June 26, 2007

                             Decided:  August 14, 2007


Filed:

         _____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Defendant Joseph Marshall appeals his conviction for attempted sexual abuse of children. He claims that the District Court impermissibly admitted evidence of prior bad acts and that the evidence presented at trial was insufficient to prove the elements of the crime. We affirm.

¶2 We restate the issues as follows:

¶3 I. Did the District Court err in admitting evidence of Marshall's prior sexual acts and sexual comments?

¶4 II. Did the State present sufficient evidence for the jury to conclude that Marshall committed the offense of attempted sexual abuse of children?

**BACKGROUND**

¶5 In the Fall of 2003, Marshall moved into the trailer next door to J.M., the victim, then eleven years old, and S.M., J.M.'s sister, who was nine years old. J.M. and S.M. had a shaky home life, and soon began spending a good deal of time at Marshall's house. Eventually, they established a routine with Marshall. On Tuesdays they ate dinner at Marshall's, on Fridays they watched movies at his house, and on Sundays he took them to McDonald's for breakfast. Additionally, Marshall would often give the girls ten to fifteen dollars for clothes, supplies and the like, and provided both the girls an "allowance" if they were well behaved. Marshall also kept soft drinks and snacks at his house for the girls.

¶6 Early in the summer of 2004, when the girls were visiting, Marshall called to the girls, and when they looked at Marshall he had his penis hanging outside his pants.

2

Sometime later in the summer, J.M. asked Marshall if he would give her $150. He responded by asking what she was going to do for the money: "[a]re you going to strip for me?" he asked. He also asked to see her crotch and, according to S.M., proposed to lick her crotch. J.M. turned down the offer and left with her sister.

¶7 Marshall was arrested and charged with sexual assault (against one of J.M's friends), attempted sexual abuse of children and indecent exposure. After being arrested and taken to the police station, Marshall voluntarily agreed to answer questions on videotape. During the taped interview Marshall admitted that he told J.M. "[w]e gotta quit hanging out together because I'm ready to pour honey over you and lick you like a popsicle . . . ." Additionally, Marshall demonstrated, on tape, how he had "humped" a counter top in front of the girls and made noises to simulate an orgasm. Further, Marshall admitted that the girls' maturing bodies, especially J.M.'s, had started to turn him on. The timeline of when these particular acts occurred is somewhat murky. However, all witnesses agreed that the acts took place approximately two months prior to Marshall's arrest.

¶8 Before trial, Marshall, in a motion *in limine*, sought to exclude evidence of the honey comment and humping incident as prior bad acts because the State was using them to show propensity; that is, the State's purpose in introducing these prior acts was to show that Marshall acted in conformity therewith when he committed the offense for which he was charged. Additionally, Marshall argued that the prior acts were inadmissible because the probative value of the prior acts was substantially outweighed by the danger of unfair prejudice. The State responded that the prior acts were admissible

3

under the "transaction rule," as described in § 26-1-103, MCA. In particular, the prior acts, according to the State, were evidence of "grooming;" that is, evidence that Marshall was building trust and desensitizing the girls to sexual advances to set them up for a future sexual crime. The Court eventually denied Marshall's motion, concluding that the prior acts formed a continuous course of conduct and therefore fit within the transaction rule.

¶9 Trial began on October 24, 2005. Just prior to the State's opening argument, Marshall requested a continuing objection to the State's use of the prior bad acts evidence, specifically noting that the evidence violated M. R. Evid. 401, 403, and 404.

¶10 At the close of the State's case-in-chief, the Defense moved for a directed verdict, arguing, among other things, that the State had failed to prove that Marshall took a material step towards the charged crime of sexual abuse of a child. The court denied the motion, concluding that, while there may be factual issues regarding the charge, the State had presented sufficient evidence to submit the matter to the jury. Marshall was subsequently found not guilty of the sexual assault charge, and guilty of the attempted sexual abuse of children and indecent exposure charges. He now appeals the attempted sexual abuse of children conviction.

**STANDARD OF REVIEW**

¶11 We review an evidentiary ruling regarding the admission of evidence of other crimes, wrongs, or acts for abuse of discretion. *State v. Buck*, 2006 MT 81, ¶ 71, 331 Mont. 517, ¶ 71, 134 P.3d 53, ¶ 71.

4

¶12    We review sufficiency of evidence claims to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCarthy*, 2004 MT 312, ¶ 46, 324 Mont. 1, ¶ 46, 101 P.3d 288, ¶ 46.

## DISCUSSION

¶13    **I. Did the District Court err in admitting evidence of Marshall's prior sexual acts and sexual comments?**

¶14    Marshall argues that the court erred in admitting evidence of the humping incident and the honey comment because the requirements of M. R. Evid. 404(b) were not met. Marshall also claims that the prior acts were inadmissible under the "transaction rule," because the acts were too spread out to constitute the "same transaction" and were highly prejudicial.

¶15    M. R. Evid. 404(b) prohibits the admission of evidence of other crimes, wrongs or acts to show conformity therewith, but allows admission for other purposes, such as to prove motive or intent. This Court's precedent, via the Modified *Just* Rule, provides additional substantive and procedural criteria for the admission of evidence of other crimes, wrongs or acts. *Buck*, ¶¶ 72-74 (citing to *State v. Just*, 184 Mont. 262, 602 P.2d 957 (1979), and *State v. Matt*, 249 Mont. 136, 814 P.2d 52 (1991). It does not appear that all of the modified *Just* criteria were met in this case. First, written notice was not given to the defendant specifying the prior acts to be admitted, and the Court did not, apparently, explain to the jury the purpose of such evidence. *See Buck*, ¶ 74. Also, the

5

*Just* rule requires that the prior act "not be remote in time." *Buck*, ¶ 73 (citations omitted).

¶16 However, the Modified *Just* Rule has an exception: evidence of acts that are inextricably linked to the offense charged are admissible, notwithstanding the criteria of the Modified *Just* Rule. *Buck*, ¶ 75 (citations omitted). This exception is codified as the "transaction rule," which provides: "[w]here the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. Pursuant to the transaction rule, prior acts that are "inextricably linked to, and explanatory of, the charged offense are admissible notwithstanding the rules relating to 'other crimes' evidence." *Buck*, ¶ 76 (quotations omitted).

¶17 In *Buck*, we concluded that evidence of the defendant's act of using methamphetamine was admissible under the transaction rule because it was "explanatory of the circumstances surrounding the charged offenses." *Buck*, ¶ 79. Buck, who was tried for and convicted of deliberate homicide and burglary, had ingested methamphetamine within hours of the alleged offenses. Thus, the evidence of Buck's methamphetamine use was not only relevant, but inextricably linked with the charged offenses and therefore not precluded by the Modified *Just* Rule. *Buck*, ¶ 79.

¶18 Here, as in *Buck*, Marshall's prior acts of humping a table and making the honey comment are explanatory of the circumstances surrounding the offense of attempted sexual abuse of children. The State was required to show that Marshall, with the specific purpose to commit sexual abuse of children, performed an act which constituted a

6

material step towards that commission. Section 45-4-103(1), MCA; Jury Instruction No. 16. A person commits the offense of sexual abuse of children if the person knowingly employs a child in an exhibition of sexual conduct, defined as the lewd exhibition of the genitals or other intimate parts of a person. Sections 45-5-625(1)(a), 45-5-620(1)(f), MCA. Consequently, the State had to show that Marshall was not just being crass or making a random lewd comment when he suggested that J.M. take off her clothes if she wanted $150, but was seriously propositioning J.M. to take her clothes off and show him her crotch, or other intimate parts, for lewd purposes.

¶19 The State, in order to prove that Marshall seriously intended to pay J.M. money for a lewd exhibition, sought to show that Marshall had been "grooming" J.M. in order to desensitize her to sexual advances. "Grooming" is "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point" where it is possible to perpetrate a sex crime against the victim. *United States v. Johnson*, 132 F.3d 1279, 1283 fn. 2 (9th Cir. 1997). The humping incident and the honey comment, as evidence of grooming, allowed the jury to infer intent from Marshall's proposition to J.M. Thus, Marshall's prior acts were inextricably linked with the charged offense of sexual abuse of children.

¶20 Admittedly, Marshall's actions, unlike the methamphetamine use in *Buck*, were not undertaken on the day of the incident, but were performed a month or two before. Relying on the definition of "same transaction" at § 46-1-202(23), MCA, Marshall asserts that, because the acts were not close enough in time, they cannot be part of the same transaction. However, while the timing of the prior acts is relevant concerning the

7

transaction rule, it is not determinative. The transaction rule is an exception to the required criteria under the Modified *Just* Rule, including the rule's insistence that the act "not be remote in time." Further, the prior act satisfies the transaction rule if it is "itself the fact in dispute" *or* if it is "evidence of that fact." Here, the prior acts of grooming, which by definition must occur over a period of time, are evidence of the fact in dispute: that Marshall intended to pay J.M. so that she would expose herself to him for lewd purposes.

¶21 Finally, we recognize that evidence of past deviant sexual acts is, by its very nature, prejudicial. However, we also recognize that courts have broad discretion in determining whether "other crimes" evidence is admissible. *Buck*, ¶ 80 (citations omitted). Given the facts of this case, in particular the "grooming" link between the prior acts and the charged offense, we conclude that the District Court did not abuse its discretion by admitting evidence of Marshall's prior acts.

¶22 **II. Did the State present sufficient evidence for the jury to conclude that Marshall committed the offense of attempted sexual abuse of children?**

¶23 Marshall claims that the State failed to prove two requirements of the charge of attempted sexual abuse of children. As explained above, the State had to prove that Marshall took a "material step" towards the commission of sexual abuse of children, which, under these facts, is employing a child in an exhibition of "sexual conduct," defined as the lewd exhibition of the genitals or other intimate parts of a person. *See* §§ 45-4-103(1), 45-5-625(1)(a) and 45-5-620(1)(f), MCA. Marshall asserts that the State did not present sufficient evidence that Marshall took a "material step" towards

8

commission of the offense. Second, Marshall asserts that the State failed to prove that he intended to employ J.M. in "sexual conduct."

¶24 A. Sufficient evidence of a "material step"?

¶25 Marshall argues that while his inquiry as to whether J.M. was going to strip in return for money was certainly inappropriate, it did not indicate an attempt to engage J.M. in sexual conduct, as Marshall did not show J.M. any money, and it was made outside in the presence of other people.

¶26 However, as elaborated above, Marshall's comment, taken in the full context of his other "grooming" behaviors, may be viewed as a material step towards paying J.M. to expose herself to him for lewd purposes. The jury may infer intent from the defendant's acts, including evidence of the defendant's prior acts. *See State v. Riley*, 270 Mont. 436, 441, 893 P.2d 310, 314 (1995) (quotations omitted). Accordingly, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Marshall took a material step towards the commission of sexual abuse of children.

¶27 B. Sufficient evidence of a "sexual conduct"?

¶28 Marshall also argues that the State failed to prove that Marshall's specific purpose was to employ J.M. in sexual conduct; that is, a lewd exhibition of the genitals or other intimate parts of a person. "Lewd" was defined in the jury instructions as the "gross flouting of community standard in respect to sexuality or nudity in public."

¶29 Here, if J.M. had immediately taken Marshall up on his offer, she would have flouted her nudity in public at his request. However, it is also possible, and somewhat more probable, that the jury inferred that Marshall's intention was to have J.M. pose for

9

him in private, in such a manner that he could perform his previously expressed fantasies. Such action with an eleven-year-old minor certainly flouts community standards, and the jury therefore could have found, beyond a reasonable doubt, that Marshall sought to employ J.M. in sexual conduct, namely a lewd exhibition of her intimate parts.

## CONCLUSION

¶30 The District Court did not abuse its discretion in admitting evidence of Marshall's prior acts. Additionally, the State presented sufficient evidence for a rational trier of fact to determine, beyond a reasonable doubt, that Marshall committed the offense of attempted sexual abuse of children.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS