JUSTICE NELSON,
specially concurring.
¶61 I concur in the Court’s resolution of Issue 4 (the sentencing issue, discussed at ¶ 58). I specially concur in the Court’s resolution of Issues 1, 2, and 3. My primary concerns relate to Issue 2; however, I first address a number of points related to Issue 1.
ISSUE 1
¶62 On the question of whether the District Court abused its discretion when it denied Crosley’s challenge for cause of potential juror Aronson, I concur in the result the Court reaches, but I do not agree with all of the Court’s analysis. First, I do not believe that a veniremember must actually say that he cannot be fair or impartial before we can find actual bias (Opinion, ¶ 39). “Bias can be revealed by a juror’s express admission of that fact, but, more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence.” State v. Chastain, 285 Mont. 61, 64, 947 P.2d 57, 59 (1997) (internal quotation marks omitted), overruled in part on other grounds, State v. Herrman, 2003 MT 149, ¶ 33, 316 Mont. 198, 70 P.3d 738.
¶63 Second, I cannot join the Court’s reasoning at ¶ 40, which resembles aharmless error analysis (i.e., because Clarkson’s testimony ultimately was not that “important” and may have even “supported” Crosley’s defense, any error in not removing Aronson for cause was *244 harmless). We have previously held that “jury selection errors are ‘structural’ errors and as such, they are not amenable to harmless error review.” State v. Bird, 2002 MT 2, ¶ 39, 308 Mont. 75, 43 P.3d 266. Even more to the point here, we have held that “structural error occurs if: (1) a district court abuses its discretion by denying a challenge for cause to a prospective juror; (2) the defendant uses one of his or her peremptory challenges to remove the disputed juror; and (3) the defendant exhausts all of his or her peremptory challenges.” State v. Good, 2002 MT 59, ¶ 62, 309 Mont. 113, 43 P.3d 948.
¶64 Notably, the dissenting opinion in Good argued for the same sort of analysis that appears in ¶ 40 of today’s Opinion. Compare Good, ¶ 64 (“The dissent thus maintains that, in a criminal prosecution in which the State’s evidence is uncontroverted, there are no disputed facts and thus no potential for prejudice arising from an erroneous denial of a challenge for cause.”), with Opinion, ¶ 40 (‘We cannot find any instances in the record where contradictory information was presented requiring the jury to weigh Clarkson’s testimony against another witness’ testimony.”). The Good Court rejected the dissent’s approach, explaining that
in a criminal case, the accused is not obligated to put on any evidence or to disprove the State’s case-rather, innocence is presumed. Thus, even if the State’s case is uncontroverted, the matter is still presented to the jury and the jury has the prerogative of rejecting the State’s case for any number of reasons including that the jurors find the State’s witnesses not credible, its evidence improbable, or its proof insufficient.
Good, ¶ 65. For this reason, the Court’s subjective analysis of “Clarkson’s importance as a trial witness” (Opinion, ¶ 40) is inapt.
¶65 The question is whether, in light of his stated inclination to “give a lot of credibility to [Clarkson’s] testimony from knowing him,” Aronson should have been removed from the venire. While I consider this to be a close question, I conclude that on the record here (including the follow-up questioning of Aronson), Crosley has not established that Aronson would have been unable to determine Crosley’s guilt or innocence fairly and impartially. Given our standard of review, therefore, I agree with the Court that the District Court did not abuse its discretion in denying the challenge for cause.
ISSUES 2 AND 3
¶66 Issue 2 concerns the admission of evidence of prior uncharged misconduct by Crosley outside Ravalli County (specifically, in Missoula *245 County and Lake County and on the trips to California). Generally, the substantive and procedural requirements of the Modified Just Rule must be met before evidence of other crimes, wrongs, or acts is admissible. State v. Just, 184 Mont. 262, 269, 274, 602 P.2d 957, 961, 963-64 (1979); State v. Matt, 249 Mont. 136, 142-43, 814 P.2d 52, 56 (1991). The Court explains, however, that the so-called “transaction rule” is an “exception” to these requirements. Opinion, ¶ 48. Thus, although the Modified Just Rule indisputably was not complied with in this case, the Court holds that evidence of Crosley’s prior bad acts was admissible under the transaction rule. Opinion, ¶ 52.
¶67 I have grave concerns about this Court’s ever-expanding pronouncements concerning the scope of the transaction rule. Over the past 15 years, in case after case, we have broadened the transaction rule to encompass more and more evidence that otherwise would have fallen within the strictures of the Modified Just Rule, and one cannot help but visualize the transaction rule as a sort of maverick Pac-Man that blips from case to case devouring “bad acts” evidence as quickly as it appears. We have read into the transaction rule language far beyond that used in the statute (§ 26-1-103, MCA), and I believe that it is time we rein in this exception before it completely swallows the Modified Just Rule and the general prohibition against evidence of other crimes, wrongs, or acts.[1]
¶68 In State v. Hansen, 1999 MT 253, 296 Mont. 282, 989 P.2d 338, we decided that the better practice is' to abandon the use of amorphous doctrines of evidence such as corpus delicti and res gestae and “to, instead, use the specific rule of evidence or statute that applies to the particular factual situation presented” in order to determine the admissibility of the evidence at issue. Hansen, ¶ 81; see also Hansen, ¶¶ 27-84 (discussing corpus delicti and res gestae). Thus, our analysis must begin with an applicable statute or rule of evidence.
¶69 The Court contends that § 26-1-103, MCA, is applicable here. This statute states:
Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.
*246 Yet, the Court does not apply the actual language of this statute. Instead, the Court applies a number of standards (articulated in ¶ 48) which have been “associated” with § 26-1-103, MCA, but which are broader than the statutory language and have no place whatsoever in our jurisprudence.
¶70 Specifically, the Court states that “evidence of other acts that are ‘inextricably linked to, and explanatory of, the charged offense’ ” is admissible under the transaction rule. Opinion, ¶ 48 (quoting State v. Lozon, 2004 MT 34, ¶ 12, 320 Mont. 26, 85 P.3d 753). Yet, the words “inextricably linked to, and explanatory of, the charged offense” do not appear in § 26-1-103, MCA. The Court goes on to state that “the requirements of the Modified Just Rule are not applied to evidence that ‘is not wholly independent or unrelated to the charged offense.’ ” Opinion, ¶ 48 (quoting Lozon, ¶ 12). Yet, if any “bad acts” evidence which is “not wholly independent or unrelated to the charged offense” is admissible under the transaction rule, then I question why we retain the pretense of having a Modified Just Rule.
¶71 The standards articulated in Lozon and repeated in ¶ 48 of the Court’s Opinion evolved from this Court’s jurisprudence under the doctrines of corpus delicti and res gestae. See State v. Derbyshire, 2009 MT 27, ¶ 32, 349 Mont. 114, 201 P.3d 811. Over the years, we have repeatedly associated those standards with § 26-1-103, MCA. See e.g. State v. Wing, 264 Mont. 215, 224-25, 870 P.2d 1368, 1374 (1994); State v. Atkins, 277 Mont. 103, 110, 920 P.2d 481, 485 (1996); State v. Beavers, 1999 MT 260, ¶ 48, 296 Mont. 340, 987 P.2d 371; State v. Insua, 2004 MT 14, ¶ 40, 319 Mont. 254, 84 P.3d 11; Lozon, ¶¶ 11-12; State v. Marshall, 2007 MT 198, ¶ 16, 338 Mont. 395, 165 P.3d 1129; State v. Bieber, 2007 MT 262, ¶¶ 54, 57, 339 Mont. 309, 170 P.3d 444; State v. Hill, 2008 MT 260, ¶ 39, 345 Mont. 95, 189 P.3d 1201.1 have done so myself in several recent cases. See e.g. State v. Buck, 2006 MT 81, ¶ 76, 331 Mont. 517, 134 P.3d 53; State v. Gittens, 2008 MT 55, ¶ 37, 341 Mont. 450, 178 P.3d 91; State v. Mackrill, 2008 MT 297, ¶¶ 40-41, 345 Mont. 469, 191 P.3d 451.
¶72 However, we are constrained by § 1-2-101, MCA, to apply the language of § 26-1-103, MCA, as written and not to read into this statute extraneous language which effectively perpetuates the doctrines of res gestae and corpus delicti.[2] We discarded those *247 doctrines in Hansen a decade ago, and they have no business “hiding out” in our jurisprudence under § 26-1-103, MCA. Again, the statute states: “Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.” Nothing in this language supports the proposition that evidence which is simply “explanatory of’ a charged offense or “not wholly independent or unrelated to” the offense is admissible pursuant to § 26-1-103, MCA. Such evidence may be admissible under another statute or rule,[3] but it is pure sophistry to hold that it is admissible •under § 26-1-103, MCA. The critical language of the statute states that the declaration, act, or omission must “form part of’ the transaction which is itself the fact in dispute or evidence of that fact. Merely being “explanatory of’ or “not wholly independent or unrelated to” the transaction is not the language of § 26-1-103, MCA.
¶73 We have previously observed that § 26-1-103, MCA, “is simply an exception to the hearsay rule.” Payne v. Buechler, 192 Mont. 311, 316, 628 P.2d 646, 649 (1981) (citing Callahan v. Chicago, Burlington & Quincy R.R. Co., 47 Mont. 401, 133 P. 687 (1913)). Indeed, insofar as the word “declaration” is concerned, § 26-1-103, MCA, is nothing more than a statutory precursor to M. R. Evid. 803(1) and (2) (respectively, the “present sense impression” and “excited utterance” exceptions to the hearsay rule). As this Court explained the statute 96 years ago in Callahan:
This provision was not intended to embody the statement of a rule by which to determine the competency of such declarations as those in question, but to be a mere direction that they must be deemed competent when they are so connected with the main transaction as to form a part of it. It states one of the exceptions to the general rule recognized by all the courts in common-law jurisdictions which requires the exclusion of hearsay statements, viz.: that when declarations by the participant in or an observer of the litigated act are so nearly connected with it in point of time that they may be regarded as a spontaneous, necessary incident, explaining and characterizing it, they may be proved as a part of it without calling the person who made them. The principle upon *248 which the exception is founded is that the declarations were made while the mind of the speaker was laboring under the excitement aroused by the incident, before there was time to reflect and fabricate, and hence the solemnity of the oath is not necessary to give it probative value. . . . “The general rule is that the declarations must be substantially contemporaneous with the litigated transaction and be the instinctive, spontaneous utterances of the mind while under the active, immediate influence of the transaction, the circumstances precluding the idea that the utterances are the result of reflection or design to make false or self-serving declarations.”
Callahan, 47 Mont. at 410-11, 133 P. at 689 (emphases added); cf. M. R. Evid. 803(1) (defining present sense impression as “[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter”); M. R. Evid. 803(2) (defining excited utterance as “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition”).
¶74 When these principles are applied to the “act or omission” language of § 26-1-103, MCA, it is clear that the statute permits evidence of acts or omissions which are “substantially contemporaneous with the litigated transaction” and are “so connected with the main transaction as to form a part of it.” For this reason, the standards “inextricably linked to” and “inseparably related to” (also recited by the Court in ¶ 48 (citing Lozon, ¶ 12)) may be plausible interpretations of § 26-1-103, MCA; however, such language cannot be interpreted as justifying the State’s “complete the picture” argument in the present case. In this connection, I agree with the following observations of the Court of Appeals in United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000):
The “complete the story” definition of “inextricably intertwined” threatens to override Rule 404(b). A defendant’s bad act may be only tangentially related to the charged crime, but it nevertheless could “complete the story” or “incidentally involve” the charged offense or “explain the circumstances.” If the prosecution’s evidence did not “explain” or “incidentally involve” the charged crime, it is difficult to see how it could pass the minimal requirement for admissibility that evidence be relevant. See FED.R.EVID. 401 and 402.
*249 The district court invoked the “res gestae” doctrine in finding the April 17 evidence inextricably intertwined with the charged crime. [Citation.] To the extent this Latinism[4] was meant to suggest that the April 17 evidence was outside Rule 404(b) because it “explained the events” or “completed the story,” we do not agree. As we have said, all relevant prosecution evidence explains the crime or completes the story. The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether. Moreover, evidence necessary to complete a story-for instance by furnishing a motive or establishing identity-typically has a non-propensity purpose and is admissible under Rule 404(b). We see no reason to relieve the government and the district court from the obligation of selecting from the myriad of non-propensity purposes available to complete most any story.
Bowie, 232 F.3d at 928-29.
¶75 Likewise here, the appropriate course of action with respect to the transaction rule is to apply the plain (and clearly narrow) language of § 26-1-103, MCA, and to require the prosecution in all other instances to comply with the requirements of the Modified Just Rule. I do not suggest that the State should be barred from ever introducing “bad acts” evidence. Rather, the State should simply comply with the substantive and procedural requirements for doing so and not seek to circumvent those requirements, in a mounting cascade of cases, by resorting to the transaction rule.
¶76 In the case at hand, the State introduced evidence of other crimes, wrongs, or acts committed by Crosley in California, Missoula County, and Lake County. None of those acts, however, “form[ed] part of a transaction which [was] itself the fact in dispute or evidence of that fact.” Section 26-1-103, MCA. The facts in dispute were whether Crosley committed specific incidents of incest and assault in Ravalli County during the discrete time intervals alleged in the Information.[5] *250 Crosley’s acts at other times and in other places, reprehensible as they were, simply were not the facts in dispute. Moreover, evidence of those acts which he committed at other times and in other places outside Ravalli County cannot be said to be evidence of what he did in Ravalli County, except in the sense that “Because he did it at other times and places, he must have done it on the occasions charged here.” Such an inference, however, is not permissible for determining Crosley’s guilt. M. R. Evid. 404(b) (“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.”).
¶77 The State’s argument that Crosley’s actions were all part of one long “transaction” might have had merit had the prosecutor charged a continuous course of conduct. But the prosecutor did not charge a continuous course of conduct, and the State’s attempt to justify the evidence of uncharged misconduct committed in California, Missoula County, and Lake County as all being part of a “transaction” is wholly without merit.
¶78 In sum, by reading into § 26-1-103, MCA, language which is not there, we permit the introduction of evidence which M. R. Evid. 404 specifically proscribes-absent compliance with the substantive and procedural protections afforded by the Modified Just Rule. And, indeed, that is how the “transaction rule” is being utilized: to end-run M. R. Evid. 404, Just, and Matt.
¶79 For these reasons, I would hold that the evidence of Crosley’s misconduct and reprehensible acts in California, Missoula County, and Lake County were not admissible under § 26-1-103, MCA.
¶80 This conclusion leads to the question of what, if any, remedy is appropriate here. Crosley concedes that he did not object to the introduction of any of this evidence. Indeed, defense counsel stated during the final pretrial conference that the State’s Notice of Intent to Introduce Evidence of Other Crimes, Wrongs & Acts “met the legal standards.” Moreover, counsel offered no objections to the evidence when it was offered by the State during trial, and counsel participated *251 in drafting the “other acts” instruction given by the District Court immediately prior to closing arguments (an instruction Crosley now claims was erroneous).
¶81 Under these circumstances, Crosley contends that we should invoke our inherent power of plain error review to review his challenges to the “bad acts” evidence. Crosley contends that the District Court erred by not giving the instructions specifically required by the Modified Just Rule. See Matt, 249 Mont. at 143, 814 P.2d at 56 (“At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes,” and “In its final charge, the court shall instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.”). I am not persuaded, however, that failing to review these alleged errors would “leave in question the fundamental fairness of the trial proceedings” as Crosley contends.
¶82 Alternatively, Crosley couches his challenge to the “bad acts” evidence in an ineffective assistance of counsel claim. Specifically, Crosley argues that defense counsel rendered ineffective assistance by failing to take appropriate steps to exclude this evidence, to object to its introduction, and to request appropriate cautionary instructions. This argument has facial appeal; however, given the prosecutor’s notice, which was grounded in both M. R. Evid. 404(b) and § 26-1-103, MCA, and given this Court’s expansive-albeit erroneous-interpretations of § 26-1-103, MCA, and the “transaction rule” over the past 15 years, I cannot agree with Crosley that his counsel’s conduct “fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances.” Whitlow v. State, 2008 MT 140, ¶ 20, 343 Mont. 90, 183 P.3d 861.
CONCLUSION
¶83 For the foregoing reasons, I concur in the Court’s resolution of Issue 4 and specially concur in the Court’s resolution of Issue 1,2, and 3.
JUSTICE COTTER joins the Special Concurrence of JUSTICE NELSON.

 Notably, counsel argues in Crosley’s opening and reply briefs on appeal that pursuant to tins Court’s recent cases applying the transaction rule, “the exception has swallowed Rule 404(b) and the Modified Just Rule and the procedural and substantive safeguards of those rules have essentially been discarded.” Counsel urges us to “revisit” our formulation of the transaction rule.

 “In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA.

 Notably, under the federal rules, “evidence of the defendant’s commission of another offense or offenses of child molestation is admissible [in a criminal case in which the defendant is accused of an offense of child molestation], and may be considered for its bearing on any matter to which it is relevant.” Fed. R. Evid. 414(a).

 “See United States v. Krezdorn, 639 F.2d 1327, 1332 (5th Cir. 1981) (stating that the inextricably intertwined doctrine is sometimes labeled res gestae, ‘an appellation that tends merely to obscure the analysis underlying the admissibility of the evidence.’).” Bowie, 232 F.3d at 928 n. 2.

 The State alleged the following counts of incest and assault:
Charge I: Incest
Count 1, A.P., 1989-91
Count 2, A.P., 1991-92
Count 3, A.P., 1992-93
*250 Count 4, A.P., 1993-95
Count 5, A.P., 1995-96
Count 6, A.P., 1996-98
Count 7, J.P., 1991-95
Count 8, J.P., 1995-98
Charge II: Assault on a Minor
Count 1, A.P., 1992-98
Count 2, J.P., 1994-98
Count 3, R.P., 1994-98