DA 08-0616

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 391

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

RYAN GENE GAITHER,

   Defendant and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 2007-396
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Robin Meguire, meguirelaw.com, Great Falls, Montana

  For Appellee:

   Hon. Steve Bullock, Montana Attorney General, Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

   Leo Gallagher, Lewis and Clark County Attorney, Carolyn Clemens,
Deputy County Attorney, Helena, Montana

     Submitted on Briefs: September 23, 2009

         Decided: November 17, 2009

Filed:

   _____
        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1   Ryan Gene Gaither (Gaither) appeals from his conviction for felony criminal endangerment and felony attempted sexual abuse of children in the First Judicial District Court. Gaither was sentenced to 10 years in the Montana State Prison (MSP) for the criminal endangerment charge, and 85 years for the attempted sexual abuse of children. Gaither was also designated as a persistent felony offender (PFO) and sentenced to an additional 50 years, with 10 suspended, at MSP. We affirm Gaither's conviction, but remand this matter to the District Court for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2   On or about November 20, 2007, the Helena Police Department commenced an investigation after receiving information from a confidential informant that Gaither had supplied drugs and alcohol to a 15-year-old female (M.H.), which resulted in her hospitalization on November 19, 2007. Detective Mark Ecola (Det. Ecola) interviewed M.H. and her mother (Diana), on November 20, 2007. M.H. and Diana confirmed to Det. Ecola that M.H. had been hospitalized on November 19 because she had overdosed on Coricidin, an over-the-counter cough medicine. M.H. told Det. Ecola that Gaither supplied the drugs to her and her 11-year-old male friend (C.B.) on November 18. C.B. is Gaither's 11-year-old brother.

¶3   Det. Ecola conducted further investigation, which led to the filing of the following four charges against Gaither on December 7, 2007: (1) one count of felony criminal endangerment; (2) two counts of felony criminal distribution of dangerous drugs; and (3) one count of misdemeanor unlawful transactions with children. On February 26, 2008,

the State filed an Amended Information adding one count of felony attempted sexual abuse of children. Because the jury ultimately convicted Gaither of only felony criminal endangerment and attempted sexual abuse of children, these are the sole charges which are the focus of the present appeal.

¶4    The allegations in support of the charges against Gaither are as follows. Gaither, who was on probation at the time, lived in a log home structure on Fantasy Road in Lewis and Clark County. The property on which Gaither was residing contained three separate residences. In addition to Gaither's log cabin, another structure was occupied by Gaither's grandparents, Shirley and Steppen Wirth, Sr., while the third structure, a mobile home, was occupied by Gaither's mother, Brandi, and C.B. On November 18, 2007, C.B. invited M.H. to spend the night at Brandi's mobile home. M.H. accepted the invitation with her mother's permission. Gaither picked up M.H. and drove her to the mobile home. Along the way, Gaither and M.H. stopped at Wal-Mart where Gaither purchased Coricidin. According to the affidavit filed in support of the Amended Information, Coricidin is an over-the-counter cold medicine which contains the drug Dextromethorphan. When taken in doses that exceed the recommended amount, Dextromethorphan may produce euphoric, stimulant, depressant, or hallucinogenic effects. Individuals seeking to experiment with drugs sometimes ingest large doses of Dextromethorphan in order to experience some of these effects.

¶5    Once Gaither and M.H. arrived at Brandi's mobile home, Gaither asked her to consume large doses of Coricidin with C.B. M.H. claimed she was initially unwilling to do so. Gaither provided M.H. with vodka and orange juice, and M.H. subsequently took

16 or 17 Coricidin tablets provided by Gaither. As a result, M.H. experienced various side effects, including vomiting, hallucinations, dissociation, disorientation, and impaired cognitive and motor functioning. Although M.H.'s memory of the events of that evening was impaired, M.H. recalled Gaither used a video camera to record images of her. She also recalled at one point Gaither carried her into one of the bedrooms, and placed her on a bed. M.H. claimed that C.B. joined her on the bed, and that the video camera was positioned so as to capture images of C.B. and M.H. on the bed.

¶6 On the morning of November 19, 2007, M.H. contacted a female friend, A.K., and informed her she needed help. A.K. contacted Diana and told her that M.H. needed help. Diana drove to Brandi's home, located M.H., and took her to the emergency room at St. Peter's Hospital in Helena. M.H. was treated for approximately 5 hours, and a toxicology report indicated she had PCP (Phencyclidine) in her blood. According to the State, the metabolite of Dextromethorphan can appear as PCP during toxicology screening.

¶7 On November 20, investigators conducted a search of the property, and seized various computing devices and a digital camera. Agent Wayde Cooperider (Agt. Cooperider) of the Division of Criminal Investigation of the State of Montana assisted Det. Ecola in the search of the property. The police determined that a computer located in Gaither's residence and a laptop seized from Brandi's mobile home contained evidence of child pornography that was allegedly obtained through internet searches using words and phrases formulated to find such pornography.

4

¶8     A review of the digital images and audio records which the investigators believed were recorded by Gaither included several arguably incriminating items of evidence. One was a record of Gaither's voice coaching C.B. during a phone call with M.H. During this recording, Gaither made the statement that he was going to entitle the film "The Demise of [M.H.]." This recording also depicts C.B. placing a call to M.H. in an attempt to lure her to C.B.'s and Gaither's location. C.B. also discusses the topic of prior sexual contact between him and M.H., to which M.H. replies that she views him more like a little brother. Gaither then can be heard whispering to C.B. with instructions as to what he should say and then C.B. offers to provide M.H. intoxicating substances to allegedly coax her to meet with him. C.B. and Gaither then indicate that they plan to replay the video to M.H. at a later time to embarrass her. This recording was presumably created before the events of November 18 and 19, 2007.

¶9     The tape then cuts to a conversation among C.B., M.H., and Gaither, which was presumably recorded on or about November 18. M.H. is speaking to Gaither about how bad she feels, and Gaither and C.B. are both trying to convince her to go into C.B.'s bed. Later on there are recordings of C.B. telling M.H. that she cannot go home, and the video also shows M.H. and C.B. on C.B.'s bed where the two of them are talking about "getting high" and C.B. is playing music in an effort to get M.H. to relax and enjoy her intoxicated condition. Gaither's voice can also be heard throughout various portions of the video. The affidavit in support of the Amended Information claimed that these images and recordings depict Gaither and C.B. trying to accomplish a plan to record M.H. on video.

¶10    In addition to searching the seized devices, investigators also interviewed C.B. and M.H.  Based on the interview with C.B., investigators believed that he and Gaither had a longstanding conspiracy to record M.H. having sexual contact with C.B.  C.B. allegedly told investigators that Gaither had previously recorded him while he telephoned M.H. in an effort to bait her to come to their residence to engage in sexual acts with C.B.  C.B. told investigators that Gaither planned to create a movie recording sexual intercourse between C.B. and M.H.[1]    In order to accomplish this objective, Gaither and C.B. allegedly agreed to supply M.H. with drugs so that she would engage in these sexual acts.  C.B. also told investigators that he recalled M.H. taking large quantities of Coricidin and that the video camera was left recording in the bedroom while he and M.H. were on the bed.  C.B. also stated that he engaged in sexual conduct with M.H. while she was intoxicated.

¶11    Further investigation also revealed evidence that Gaither had accessed child pornography on the internet and had viewed child pornography with C.B. prior to November 18.

¶12    M.H. told investigators that she recalled Gaither using the video camera to record her behavior while she was under the influence of the Coricidin.  She recalled Gaither leaving the camera in the bedroom, but did not recall engaging in sexual conduct with C.B., although she also stated that she was hallucinating and disorientated at several points during the night.  M.H. also stated that on the morning of November 19, she

---

[1] At trial, C.B. somewhat recanted this statement, testifying that the purpose of recording M.H. on the night in question was to simply embarrass her.

overheard Gaither question C.B. as to whether he had successfully engaged in sex with her. She also told investigators that Gaither told her he had taken images of her while she was intoxicated and either had or intended to post the images on the internet. M.H. claims that when she complained to Gaither about the effects of the drugs and his claims regarding posting images of her on the internet, he simply told her that if she would have died as a result of the Coricidin he would have buried her. M.H. also indicated that C.B. threatened to kill her with a large knife immediately after she had complained to Gaither.

¶13 M.H. further told investigators that on November 18, 2007, Gaither had asked her to take three morphine tablets and that she refused at the time, but that she did consume a drink supplied to her by Gaither containing Vodka and orange juice. M.H. also stated that Gaither had given C.B. both morphine and marijuana which C.B. consumed.

¶14 In addition to the seizure of the camera and computers, investigators also seized a receipt indicating the purchase of Coricidin at the Helena Wal-Mart store during the afternoon of November 18, 2007. Investigators also obtained a surveillance video from Wal-Mart depicting Gaither purchasing the product at the Wal-Mart pharmacy. Investigators seized from the kitchen of Brandi's residence a bubble pack commonly used to package pills, a coupon for a discounted purchase of Coricidin, and a bottle of vodka and an orange juice container in the refrigerator.

¶15 The offense of sexual abuse of children is codified at § 45-5-625, MCA. This statute reads in pertinent part as follows:

> A person commits the offense of sexual abuse of children if the person . . . knowingly photographs, films, videotapes, develops or duplicates the

7

photographs, films, or videotapes, or records a child engaging in sexual conduct, actual or simulated . . . .

Section 45-5-625(1)(b), MCA.

¶16 Section 45-4-103, MCA, outlines the inchoate offense of attempt. It reads as follows:

> **45-4-103. Attempt.** (1) A person commits the offense of attempt when, with the purpose to commit a specific offense, the person does any act toward the commission of such offense.
> (2) It shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances, it would have been impossible for the accused to commit the offense attempted.
> (3) A person convicted of the offense of attempt shall be punished not to exceed the maximum provided for the offense attempted.
> (4) A person shall not be liable under this section if, under circumstances manifesting a voluntary and complete renunciation of criminal purpose, he avoided the commission of the offense attempted by abandoning his criminal effort.
> (5) Proof of the completed offense does not bar conviction for the attempt.

¶17 After these charges were filed, Gaither moved to dismiss the attempted sexual abuse of children charge for lack of probable cause, arguing there was no evidence that any sexual activity occurred. A hearing was held on Gaither's motion on April 30, 2008. Prior to this date, on April 2 the State filed a written notice of its intent to introduce evidence of Gaither's prior bad acts pursuant to the Modified *Just* Rule. *See State v. Weldy*, 273 Mont. 68, 902 P.2d 1 (1995). In particular, the prosecution sought to introduce evidence of the following: (1) that on or about August 30, 2007, Gaither entertained both C.B. and M.H. at the property on Fantasy Road in Lewis and Clark County, where he made sexual overtures toward her and provided alcohol to her and possibly C.B.; (2) that Gaither used the internet to access pornographic and other images

of children, both pubescent and prepubescent; (3) that on November 17-18, 2007, Gaither provided alcohol to M.H. and her friends and solicited M.H. to introduce him to one of M.H.'s friends so he could socialize with her; and (4) that Gaither allowed or encouraged C.B. to view pornographic material.

¶18 Although it filed written Modified *Just* Rule notice, the State primarily claimed that such evidence was admissible under the "transaction rule," codified at § 26-1-103, MCA. This statue provides that "[w]here the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. The State asserted that written notice pursuant to the Modified *Just* Rule not required because this conduct was an integral part of the offenses charged against Gaither; however, it nonetheless provided such notice in what it terms on appeal an exercise of caution.

¶19 At the hearing on his motion to dismiss, Gaither sought an order in limine prohibiting the State from introducing evidence of prior bad acts under M. R. Evid. 404(b). In particular, Gaither sought to exclude any evidence related to his alleged computer searches for child pornography and/or alleged viewing of pornography as well as previous interactions with C.B. and M.H., arguing that evidence was prejudicial and was not explanatory of the charged offenses. The State asserted that the evidence was admissible because it was relevant to explaining Gaither's plan, motive, and intent regarding the charged offenses. The State also asserted that this evidence relating to Gaither's alleged viewing of pornography, and encouraging C.B. to watch it as well, was

9

part of grooming behavior culminating in Gaither's plan to record C.B. and M.H. engaging in sexual conduct.

¶20 The District Court ultimately denied both motions. Regarding the motion to dismiss, the District Court determined that the factual allegations in support of the Amended Information were sufficient to establish probable cause that Gaither committed the charged offenses. The District Court denied Gaither's motion in limine from the bench stating:

> I am going to allow this evidence in. I find that it is part of the defendant's continual [modus] operandi. It also is an integral part of the allegedly—it would be allegedly the defendant's pattern of grooming these children and preparing them for whatever it is sexually he wanted to do with them and his use of drugs and sexual activity is all part and parcel of—of the defendant's motive and his conduct and I think the jury needs to know that to understand, to get the picture, to get the complete picture of what the defendant was doing. It is—[the prosecutor] is right, it is transactional because it is a continual—it is continual conduct on the part of the defendant, if it were proven to be true, that he starts out with plying these children with alcohol, plying them with photography of pornography and sexual activity, sexual behavior, between him and the children, and so in that sense it is transactional. It is one continual pattern of conduct that this guy is doing to obtain his objectives, whatever it was he wanted to ultimately do with these kids and have them perform sex on each other and tape.

¶21 On June 2, 2008, the trial commenced. During trial, the jury heard from M.H., C.B., Brandi, Diana, Det. Ecola, Agt. Cooperider, and other witnesses. On the morning of the final day of trial, Gaither moved for a mistrial. The previous day, Agt. Cooperider had testified regarding some of Gaither's internet searches and activity involving child pornography. At the time, Gaither asserted his continuing objection to this type of testimony pursuant to M. R. Evid. 404(b), but did not request a limiting instruction. The

District Court did not give a limiting instruction regarding Agt. Cooperider's testimony. In his motion for a mistrial, Gaither argued that the District Court should have given this instruction once he raised the Rule 404(b) objection. The District Court noted, however, that Gaither failed to request an instruction at the time, and accordingly denied the motion for a mistrial.

¶22 Gaither then moved to dismiss the attempted sexual abuse of children charge for insufficient evidence. Gaither argued that sexual conduct of a minor is an essential element of this offense, and that the State had failed to prove that sexual conduct between M.H. and C.B. had actually occurred. Gaither argued that no reasonable juror could find beyond a reasonable doubt that sexual conduct occurred between M.H. and C.B. during the time in question. The District Court denied these motions from the bench as follows:

> Your motion is denied. There is enough evidence that's been presented to indicate that a reasonable jury could find—if they wanted to believe the testimony—that the jury could find that the Defendant in fact intended to videotape these two kids involved in some sex act, but couldn't complete it because they ran out of tape, or got too drunk, or whatever.
>
> But that was their intent, and that's why they had the camera going. And I think there is enough evidence for that to go to the jury. So your motion for a directed verdict is denied.
>
> Your motion to dismiss based on a motion for a mistrial is denied because the jury was previously instructed as to the prior acts, and nobody requested and nobody warned me ahead of time before that. You didn't ask me to read, to instruct the jury before that evidence.
>
> I'm not sure that that evidence actually did go to prior acts. I'm not sure it did. It may have gone to prior acts, as far as pulling down pornography and that sort of thing.

¶23 During the settling of jury instructions, Gaither requested a jury instruction to the effect that actual sexual conduct of children was a required element of the offense of attempted sexual abuse of children. The District Court denied this instruction. Gaither

11

was subsequently convicted by the jury of felony criminal endangerment and felony attempted sexual abuse of children.

¶24 Gaither was sentenced at a sentencing hearing on September 5, 2008. The District Court imposed a sentence of 85 years for the attempted sexual abuse of children charge, 10 years for the criminal endangerment charge, and then added a sentence of 50 years, with 10 suspended, based on Gaither's designation as a PFO. The District Court also designated Gaither a Level III sex offender, and ordered that he successfully complete sexual, mental and chemical dependency programs before he would be eligible for parole.

¶25 Gaither now appeals his conviction and sentence. We state the issues on appeal as follows:

¶26 **Issue One**: *Did District Court err in denying Gaither's motion to dismiss the attempted sexual abuse of children charge, and was the jury properly instructed on this charge?*

¶27 **Issue Two:** *Did the District Court abuse its discretion when it denied Gaither's motion in limine regarding prior bad act evidence of viewing child pornography?*

¶28 **Issue Three:** *Did the District Court err when it denied Gaither's request for a mistrial based on the claimed failure to give a limiting instruction prior to introduction of alleged prior bad act evidence against him?*

¶29 **Issue Four:** *Did the District Court err when it sentenced Gaither as a PFO?*

## STANDARD OF REVIEW

¶30 The denial of a motion to dismiss in a criminal case presents a question of law which we review de novo to determine if the district court's conclusion of law is correct.

12

*State v. McWilliams*, 2008 MT 59, ¶ 22, 341 Mont. 517, 178 P.3d 121. We review jury instructions for an abuse of discretion. *State v. Field*, 2005 MT 181, ¶ 16, 328 Mont. 26, 116 P.3d 813.

¶31 We review a district court's grant or denial of a motion in limine for an abuse of discretion. *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶ 52, 350 Mont. 538, 208 P.3d 836. We review a district court's decision to deny a mistrial for abuse of discretion as well. *State v. Giddings*, 2009 MT 61, ¶ 42, 349 Mont. 347, 208 P.3d 363. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Larchick*, ¶ 52.

¶32 We review criminal sentences that include at least one year of actual incarceration for legality only. *Giddings*, ¶ 42. We consider whether the sentencing court had the authority to impose a given sentence, and whether that sentence falls within the parameters set by the applicable sentencing statutes. *Giddings*, ¶ 42 (citing *State v. Rosling*, 2008 MT 62, ¶ 59, 342 Mont. 1, 180 P.3d 1102).

**DISCUSSION**

¶33 **Issue One**: *Did District Court err in denying Gaither's motion to dismiss the attempted sexual abuse of children charge, and was the jury properly instructed on this charge?*

¶34 Gaither argues the District Court erred in denying his motion to dismiss the attempted sexual abuse of children charge. Gaither argues that sexual conduct is an essential element of the offense of attempted sexual abuse of children, and that there was no credible evidence presented of such sexual activity or conduct. Gaither maintains his

13

argument is supported by *State v. Fuller*, 266 Mont. 420, 880 P.2d 1340 (1994). Because the State did not prove that sexual conduct or activity occurred between M.H. and C.B., Gaither argues the District Court erred in failing to dismiss this charge and in instructing the jury on it.

¶35 The offense of sexual abuse of children is codified at § 45-5-625, MCA, and the inchoate offense of attempt is outlined at § 45-4-103, MCA. *See Opinion*, ¶¶ 15-16. We agree with the District Court that actual sexual conduct or activity between alleged victims is not an essential element of the offense of attempted sexual abuse of children. By its clear terms, the attempt statute does not require the defendant to actually have completed the alleged crime; rather, the State must show that the defendant had the purpose to commit this offense, and took steps towards its act or commission. The State presented evidence showing that it was Gaither's intent to videotape C.B. and M.H. This included evidence gleaned from interviews with M.H., C.B., and the actual contents of the video recording which was viewed by investigators and shown to the jury. Whether or not sexual conduct or activity actually occurred between M.H. and C.B. is immaterial in this case, so long as the State can present evidence to show that Gaither's intent was that such conduct occur and that he took steps towards filming or videotaping such conduct.

¶36 In this regard, *Fuller* is clearly distinguishable from the instant case. In *Fuller*, the defendant Fuller was convicted of attempted sexual assault following a bench trial. Fuller was driving by an elementary school in Billings when he honked his horn and yelled "nice butt" in the direction of two girls. A few minutes later, he approached again,

this time driving on the wrong side of the street, and pulling up directly alongside the girls saying "let's do it" while sticking out his lips and tongue and licking his lips. *Fuller*, 266 Mont. at 421, 880 P.2d at 1341. A third girl heard these comments as well. However, there was no evidence that Fuller ever stopped the car, opened his door, or reached out for them in any way. *Fuller*, 266 Mont. at 422, 880 P.2d at 1342.

¶37 Fuller was convicted of three counts of attempted sexual assault after a bench trial. In its oral pronouncement from the bench, the district court observed that if actual touching was a required element of the offense, then Fuller was likely not guilty because the evidence did not show beyond a reasonable doubt that Fuller intended to actually touch the victims. *Fuller*, 266 Mont. at 423, 880 P.2d at 1342. This Court subsequently reversed Fuller's conviction because the district court found there was insufficient evidence to prove that Fuller acted with the purpose to commit the underlying offense of sexual assault. *Fuller*, 266 Mont. at 423, 880 P.2d at 1342.

¶38 Here, by contrast, the State did present sufficient evidence that Gaither intended to videotape C.B. and M.H. engaging in sexual activity or conduct. The acts taken towards this end include, among other things, grooming behaviors towards C.B., providing Coricidin to M.H., and setting up the video camera in the bedroom while C.B. and M.H. were on the bed together. Thus, the District Court did not err in refusing to dismiss this charge, nor did it abuse its discretion in instructing the jury accordingly.

¶39 **Issue Two:** *Did the District Court abuse its discretion when it denied Gaither's motion in limine regarding prior bad act evidence of viewing child pornography?*

15

¶40  Gaither argues that the District Court erred in admitting prior bad act evidence of him viewing child pornography. Gaither argues that he was not charged with any offenses related to the manufacture or possession of child pornography, and therefore such evidence was not relevant, inextricably linked to, or explanatory of any of the charged offenses. Nor was such evidence relevant to prove motive, opportunity, intent, preparation, or planning with regards to the offenses he was charged with. Instead, Gaither argues the purpose of such evidence was to inflame and prejudice the jury, and prove that Gaither had a bad character, was interested in illicit and illegal images of children, and acted in conformity with this character in trying to make a video of minors engaging in sexual activity. Gaither argues such character evidence is prohibited under M. R. Evid. 404(b), and that the District Court prejudiced his right to a fair trial in admitting it.

¶41  The State argues that the District Court did not err in allowing this evidence at trial under the transaction rule, codified at § 26-1-103, MCA. *See Opinion*, ¶ 18. As we stated in *State v. Crosley*, 2009 MT 126, 350 Mont. 223, 206 P.3d 932,

> The transaction rule acknowledges that "a longstanding distinction exists between Rule 404(b) 'other crimes' evidence and evidence of a defendant's misconduct which is inseparably related to the alleged criminal act." Thus, the requirements of the Modified *Just* Rule are not applied to evidence that "is not wholly independent or unrelated to the charged offense."

*Crosley*, ¶ 48 (quoting *State v. Lozon*, 2004 MT 34, ¶ 12, 320 Mont. 26, 85 P.3d 753).

¶42  The State argues that the disputed prior bad act evidence in this case is falls within the ambit of the transaction rule and is admissible under *State v. Marshall*, 2007 MT 198, 338 Mont. 395, 165 P.3d 1129. In *Marshall*, defendant Marshall was convicted of

16

attempted sexual abuse of children and indecent exposure. In the summer of 2004, Marshall had allegedly shown his penis to two minor girls who were his neighbors. *Marshall*, ¶ 6. He also allegedly offered to give one of the girls (J.M.) $150 dollars if she would strip for him, and asked to see J.M's crotch and proposed to lick her crotch as well. After his arrest, Marshall admitted to officers that he had told J.M. "[w]e gotta quit hanging out together because I'm ready to pour honey over you and lick you like a popsicle . . . ." *Marshall*, ¶ 7. Marshall also demonstrated to officers how he had "humped" a countertop in front of the girls and made noises simulating an orgasm. *Marshall*, ¶ 7. Finally, Marshall admitted that the girls' maturing bodies had started to turn him on. *Marshall*, ¶ 7. Although the precise timeframe within which these behaviors occurred was unclear, the witnesses generally agreed that it was approximately two months prior to Marshall's arrest. *Marshall*, ¶ 7.

¶43 Prior to trial, Marshall sought to exclude evidence of the honey comment and the humping incident as inadmissible prior bad acts. *Marshall*, ¶ 8. The district court denied the motion, holding that this evidence was admissible under the transaction rule. After his conviction, Marshall appealed the district court's ruling on this matter. He argued such evidence was not admissible under the transactional rule, was highly prejudicial, and thus barred under M. R. Evid. 404(b). *Marshall*, ¶ 14. We affirmed the district court's decision. First, we concluded that the honey comment and the humping incident were explanatory of the circumstances surrounding the offense of attempted sexual abuse of children. *Marshall*, ¶ 18. We noted that,

17

> The State was required to show that Marshall, with the specific purpose to commit sexual abuse of children, performed an act which constituted a material step towards that commission. Section 45-4-103(1), MCA; Jury Instruction No. 16. A person commits the offense of sexual abuse of children if the person knowingly employs a child in an exhibition of sexual conduct, defined as the lewd exhibition of the genitals or other intimate parts of a person. Sections 45-5-625(1)(a), 45-5-620(1)(f), MCA. Consequently, the State had to show that Marshall was not just being crass or making a random lewd comment when he suggested that J.M. take off her clothes if she wanted $150, but was seriously propositioning J.M. to take her clothes off and show him her crotch, or other intimate parts, for lewd purposes.
>
> The State, in order to prove that Marshall seriously intended to pay J.M. money for a lewd exhibition, sought to show that Marshall had been "grooming" J.M. in order to desensitize her to sexual advances. "Grooming" is "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point" where it is possible to perpetrate a sex crime against the victim. *United States v. Johnson,* 132 F.3d 1279, 1283 fn. 2 (9th Cir.1997). The humping incident and the honey comment, as evidence of grooming, allowed the jury to infer intent from Marshall's proposition to J.M. Thus, Marshall's prior acts were inextricably linked with the charged offense of sexual abuse of children.

*Marshall,* ¶¶ 18-19.

¶44 Similarly, Gaither's conduct in viewing the child pornography and showing this material to C.B. was inextricably linked to and explanatory of the charged offense. At trial, C.B. recalled that Gaither had shown him at least one child pornography site prior to the night in question and told him that "This is what pedophiles look at." While it is unclear precisely when C.B. was shown this particular site, evidence retrieved from the computers and admitted at trial demonstrated that Brandi's computer had been used to access pornographic material for the first time on October 14, 2007, using the following search terms: Japanese, school, girl, rape, and fetish. The last time the computer was used was on November 15, 2007, and the terms used were: sexy, preteen, and models.

This evidence, combined with C.B.'s testimony, was sufficient to establish that the viewing of child pornography was close in time to the night of November 18 when the offense occurred and that this behavior was part of Gaither's alleged attempts to "groom" C.B. for the purpose of committing the offense.

¶45    Furthermore, this type of prior bad act is specifically linked to the nature and type of crime allegedly committed by Gaither. The evidence admitted at trial was sufficient to allow a reasonable jury to conclude it was Gaither's intent to video tape C.B. and M.H. engaging in sexual conduct of some sort. In order to effect this purpose, Gaither attempted to enroll C.B. in the plan. Showing C.B. child pornography, and discussing and normalizing it with him, was thus inextricably linked to the attempted sexual abuse of children charge. This evidence is also explanatory of the circumstances surrounding this offense. It goes to show that Gaither's placing of the video camera in the bedroom, and giving an overdose of Coricidin to M.H., were not just random, spur of the moment acts, but were part of a concerted effort on Gaither's part to videotape M.H. and C.B. engaged in some form of sexual conduct.

¶46    Accordingly, we hold that the prior bad act evidence admitted against Gaither fell within the transaction rule, and that the District Court did not abuse its discretion in denying Gaither's motion in limine and admitting this evidence at trial.

¶47    **Issue Three:** *Did the District Court err when it denied Gaither's request for a mistrial based on the claimed failure to give a limiting instruction prior to introduction of alleged prior bad act evidence against him?*

¶48    Gaither's motion for a mistrial was based on his assertion that the District Court failed to give a limiting instruction prior to Agt. Cooperider's testimony about Gaither's

use of the internet to search and view child pornography. *See Opinion*, ¶ 21. As noted by the District Court at the time, although Gaither raised the Rule 404(b) objection, he did not request a limiting instruction. Furthermore, a limiting instruction regarding prior bad act evidence was given at the prosecutor's request during the testimony of Det. Ecola in the State's case-in-chief.

¶49 Given that we have held that the disputed evidence was admissible under the transaction rule, the requirements of Rule 404(b) do not apply to its admission. *See Crosley*, ¶ 48 (citing *Lozon*, ¶ 12). Thus, a limiting instruction was not, as a matter of law, required. For these reasons, we hold that the District Court did not abuse its discretion in denying Gaither's motion for a mistrial.

¶50 **Issue Four:** *Did the District Court err when it sentenced Gaither as a PFO?*

¶51 Gaither received an 85-year sentence for attempted sexual abuse of children, 10 years for criminal endangerment, and an additional 50 years, with 10 suspended as a PFO, for a total of 135 years imprisonment. Gaither does not dispute his designation as a PFO. He argues, however, that the maximum sentence, in total, which could be imposed on him as a PFO, is 100 years. Accordingly, Gaither argues his sentence is contrary to statute and therefore illegal. The PFO statute upon which he relies is § 46-18-502, MCA, which reads in pertinent part as follows:

> Except as provided in 46-18-219, an offender shall be imprisoned in a state prison for a term of not less than 10 years or more than 100 years or shall be fined an amount not to exceed $50,000, or both, if:
> (a) the offender was a persistent felony offender, as defined in 46-18-501, at the time of the offender's previous felony conviction;
> (b) less than 5 years have elapsed between the commission of the present offense and:

(i) the previous felony conviction; or

(ii) the offender's release on parole, from prison, or from other commitment imposed as a result of the previous felony conviction; and

(c) the offender was 21 years of age or older at the time of the commission of the present offense.

Section 46-18-502(2), MCA.

¶52 The State argues that the sentence available under the PFO statute can be applied to specific crimes in order to augment the overall sentence available for a defendant being sentenced for more than one felony. In this case, for instance, the State argues that the District Court could have sentenced Gaither to a total of 200 years in prison. The State arrives at this figure by asserting that Gaither could have been sentenced to 100 years for the attempted sexual abuse of children, and then sentenced as a PFO for felony criminal endangerment and received another 100-year consecutive sentence. Because Gaither's aggregate sentence of 135 years imprisonment fell below the possible range of 200 years, the State argues his sentence is legal and should not be reversed.

¶53 We have not yet considered whether § 26-18-502(2), MCA, permits a district court to impose a sentence for a term of imprisonment exceeding 100 years in cases where a defendant is being sentenced as a PFO and has been convicted of multiple felonies in a single proceeding. *See State v. Robinson*, 2008 MT 34, ¶ 18 n.1, 341 Mont. 300, 177 P.3d 488.

¶54 In Montana, criminal sentencing alternatives are governed by statute. *State v. Brendal*, 2009 MT 236, ¶ 11, 351 Mont. 395, 213 P.3d 448. The wording in § 46-18-502(2), MCA, is mandatory. Once the district court makes the decision to sentence an offender as a PFO, the statute states that the term of imprisonment *shall be*

from 10 to not more than 100 years. The PFO statutes do not give the district court the authority to mix and match a PFO sentence with another felony conviction occurring in the same proceeding and exceed the 100-year limit for imprisonment. Once the State opted to seek PFO designation and the District Court proceeded to impose it, the plain language of § 48-16-502(2), MCA, prohibited a term of imprisonment of more than 100 years. Gaither was sentenced under this statute and received a term of imprisonment in excess of 100 years.

¶55 Thus, Gaither's sentence is illegal and must be remanded to the District Court for resentencing. If the State seeks to sentence Gaither as a PFO in this case, he cannot be imprisoned for more than 100 years.

## CONCLUSION

¶56 We affirm Gaither's conviction for criminal endangerment and attempted sexual abuse of children. We remand Gaither's sentence for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS